FRANK DEREBERY v. PITT COUNTY FIRE MARSHALL

No. 8410IC1294

(Filed 16 July 1985)

1. **Master and Servant § 69— workers' compensation—volunteer fireman—two part-time jobs—principal employment—average weekly wages**

    A volunteer fireman who worked at two part-time jobs before becoming permanently disabled was entitled to compensation based on the wages earned in the job in which he principally earned his livelihood rather than on his combined average earnings from both jobs, and the evidence supported a finding by the Industrial Commission that the higher paying of his two part-time jobs constituted his principal employment. G.S. 97-2(5).

2. **Master and Servant § 69— workers' compensation—other treatment or care—rehabilitative services—residence not included**

    Statutory provisions permitting compensation for "other treatment or care" and for "rehabilitative services," G.S. 97-25 and G.S. 97-29, do not extend an employer's liability to the furnishing of a residence for an injured employee.

3. **Master and Servant § 69— workers' compensation—employer not liable for housing**

    The Industrial Commission erred in requiring an employer to provide an injured employee confined to a wheelchair with wheelchair accessible housing since the provision of housing is not within the liability of an employer to pay compensation to an injured employee.

APPEALS by plaintiff and defendant from opinion and award of the North Carolina Industrial Commission filed 21 September 1984. Heard in the Court of Appeals 6 June 1985.

Plaintiff, a volunteer fireman, sustained an injury by accident on 5 March 1983 arising out of and in the course of the performance of his duties. As a result of his injury, plaintiff is permanently and totally disabled, and is entitled to benefits allowed by the Workers' Compensation Act.

At the time of his injury, plaintiff was employed at two part-time jobs. He had worked at the Sonic Drive-In (Sonic) for more than a year preceding his injury, and had begun work at Bill Askew Motors (Askew) in late December 1982 or early January 1983. His average weekly wage from Sonic was $74.41; his average weekly wage from Askew was $87.40. The deputy commissioner found that plaintiff's employment with Askew was the employment in which he principally earned his livelihood. He based the award of weekly compensation, payable for plaintiff's lifetime, upon plaintiff's average weekly wage from his employment with Askew. Plaintiff appealed to the Full Commission, contending that weekly compensation should have been calculated upon his combined average weekly wages from both employments.

At the time of his injury, and prior thereto, plaintiff lived with his parents, who rent the house in which they reside. After his release from the hospital, he resumed living with them. As a result of his injury, plaintiff is confined to a wheelchair, and certain rooms in the house are inaccessible to him. With the exception of a wheelchair ramp constructed free of charge by volunteer firemen, the owner of the house refuses to allow any modifications to accommodate plaintiff's handicap. Plaintiff is capable of caring for himself and desires to live alone. The deputy commissioner found that defendant "should furnish plaintiff with a completely wheelchair accessible place to live." He ordered defendant to furnish plaintiff "with an appropriate place to live in view of his disabled condition," and in addition, that defendant pay for the cost of reasonable medical care. Defendant appealed to the Full Commission from that portion of the award requiring that it provide plaintiff with wheelchair accessible housing.

The Full Commission, with Commissioner Clay dissenting in part, sustained the results reached by the deputy commissioner, adopting his findings of fact, conclusions of law and award as its own. Both plaintiff and defendant appeal.

*Blount and White, by Marvin Blount, Jr. and Charles Ellis for plaintiff appellant-appellee.*

*Teague, Campbell, Dennis & Gorham, by Linda Stephens for defendant appellee-appellant.*

MARTIN, Judge.

We are presented with two questions. The first is whether the Industrial Commission correctly calculated plaintiff's weekly compensation benefits. We hold that it did. The second is whether the Commission properly required defendant to furnish plaintiff with a wheelchair accessible residence. We hold that portion of the Commission's opinion and award to be error.

[1] In his appeal, plaintiff assigns error to the manner in which the Industrial Commission determined the amount of weekly compensation to which he is entitled as a result of his injury. Payment of compensation to a volunteer fireman who is injured in the performance of his duties is controlled by G.S. 97-2(5), which provides, in pertinent part, as follows:

> In case of disabling injury or death to a volunteer fireman . . . under compensable circumstances, compensation payable shall be calculated upon the average weekly wage the volunteer fireman . . . was earning *in the employment wherein he principally earned his livelihood as of the date of injury.* [Emphasis supplied.]

Plaintiff contends that the Industrial Commission erred in determining that his employment with Askew was his principal employment. He contends that both of his jobs, with Askew and with Sonic, were employments "wherein he principally earned his livelihood."

It is well established that where there is competent evidence before the Industrial Commission to support its findings of fact, those findings are conclusive on appeal. *McLean v. Roadway Express*, 307 N.C. 99, 296 S.E. 2d 456 (1982). The evidence before the

Industrial Commission showed that during 1982, plaintiff earned an average of $333.00 per month from his employment with Sonic. However, after beginning his employment with Askew in late December 1982, he worked consistently longer hours and earned considerably more money at Askew than at Sonic. In January 1983, he earned $379.52 from his employment at Askew, while earning $197.66 at Sonic. In February 1983, his earnings from Askew amounted to $300.52 as compared to $167.84 from Sonic. During the first four days of March 1983, before his injury on 5 March, plaintiff earned $81.63 from Askew and $52.25 from Sonic. This evidence supports the Commission's finding that plaintiff's principal employment on the date of his injury was with Askew.

Plaintiff argues, however, that neither job provided him sufficient income with which to support himself, and that he is entitled to be paid compensation calculated on the basis of his combined average weekly earnings from both of his part-time jobs. While we are sympathetic to plaintiff's situation under the facts of this case, the provisions of G.S. 97-2(5) compel us to reject this argument. In providing the method by which compensation for volunteer firemen is calculated, the General Assembly adopted as the basis for determining compensation the wages earned by the volunteer fireman in his principal employment, rather than permitting a combination of his earnings from multiple employments. *Barnhardt v. Cab Co.*, 266 N.C. 419, 146 S.E. 2d 479 (1966). Based upon its finding that plaintiff's principal employment on the date of his injury was with Askew, the Commission correctly concluded that he was entitled to weekly compensation based on his average weekly wage from that employment.

Defendant appeals from that portion of the Commission's opinion and award which requires defendant to "furnish plaintiff with an appropriate place to live in view of his disabled condition." Defendant contends that the Commission exceeded its authority in requiring that defendant provide plaintiff with housing. We agree.

The evidence before the Commission disclosed that portions of plaintiff's parents' house are inaccessible to him, and that he is capable of living independently and desires to do so. One of his physicians recommended that he obtain a wheelchair accessible apartment. A mobile home called "The Enabler," which is de-

signed to accommodate persons confined to wheelchairs, is available at a cost of approximately $33,000.00. Plaintiff operates an automobile which was equipped with hand controls at defendant's expense. Upon this evidence, the Commission found that "[p]laintiff needs to live alone," and "[d]efendant should furnish plaintiff with a completely wheelchair accessible place to live . . . ." The Commission concluded, upon those findings:

> Defendant shall furnish plaintiff with all reasonable and necessary treatment or care for the well being of plaintiff which includes an appropriate place for plaintiff to live in view of his condition.

Neither the type of residence (mobile home, apartment or permanent house) nor the manner in which it was to be provided (rent-free use or purchase) was specified in the opinion and award.

[2] In ordering defendant to provide plaintiff with housing appropriate to his disability, the Commission relied on the provisions of G.S. 97-25 and G.S. 97-29. G.S. 97-25 provides, in pertinent part, as follows:

> Medical, surgical, hospital, nursing services, medicines, sick travel, rehabilitation services, and other treatment including medical and surgical supplies as may reasonably be required to effect a cure or give relief . . . and in addition thereto such original artificial members as may be reasonably necessary at the end of the healing period shall be provided by the employer.

G.S. 97-29 applies to cases of total and permanent disability and provides, in pertinent part, that:

> In cases of total and permanent disability, compensation, including reasonable and necessary nursing services, medicines, sick travel, medical, hospital, and other treatment or care or rehabilitative services shall be paid for by the employer during the lifetime of the injured employee.

In approving an award allowing payment to a disabled claimant's brother and wife for around-the-clock care, our Supreme Court has held that the provision for "other treatment or care" contained in G.S. 97-29 goes beyond the specifics set forth in the statute. *Godwin v. Swift & Co.*, 270 N.C. 690, 155 S.E. 2d 157

(1967). However, neither the provision requiring payment for "other treatment or care" nor the provision requiring payment for "rehabilitative services" can be reasonably interpreted to extend the employer's liability to provide a residence for an injured employee. *See Low Splint Coal Co., Inc. v. Bolling*, 224 Va. 400, 297 S.E. 2d 665 (1982) (construction of wheelchair ramp, bathroom facilities and other renovations to accommodate wheelchair held not to come within provisions of workers' compensation statute requiring employer to pay for "other necessary medical attention" and "reasonable and necessary vocational rehabilitation training services"). *Cf. Peace River Electric Corp. v. Choate*, 417 So. 2d 831 (Fla. 1st DCA) (1982), *petition for rev. dismissed*, 429 So. 2d 7 (1983) (court approved award requiring employer to provide claimant with rent-free occupancy of wheelchair accessible modular home, describing the award as "extraordinary relief" due to "unique" circumstances).

[3]    While the Workers' Compensation Act is liberally construed to benefit the injured employee, the language of the statute must be followed. Neither the Industrial Commission nor the courts can judicially legislate expanded liability under the guise of liberal statutory construction. *Rorie v. Holly Farms*, 306 N.C. 706, 295 S.E. 2d 458 (1982). The General Assembly has not included the provision of housing within the liability of an employer to pay compensation to an injured employee. The Industrial Commission was, therefore, without authority to require defendant to bear that responsibility. Accordingly, we reverse and vacate that portion of the opinion and award requiring defendant to "furnish plaintiff with a suitable place to live in view of his disabled condition."

Plaintiff's appeal—affirmed.

Defendant's appeal—reversed.

Judges ARNOLD and PARKER concur.