NO. COA13-9

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

SANTOS TINAJERO,
      Employee,
      Plaintiff,

   v.                                    North Carolina
                                        Industrial Commission
BALFOUR BEATTY INFRASTRUCTURE,          I.C. No. 091464
INC.,
      Employer,


ZURICH AMERICAN INSURANCE COMPANY,
      Carrier,
      Defendants.


Appeal by plaintiff and defendants from opinions and awards entered by the North Carolina Industrial Commission on 13 September 2010 and 16 October 2012. Heard in the Court of Appeals 9 May 2013.

*R. James Lore, Attorney at Law, by R. James Lore, for plaintiff.*

*Stiles, Byrum & Horne, L.L.P., by Henry C. Byrum, Jr., for defendants.*


GEER, Judge.


Plaintiff Santos Tinajero and defendants Balfour Beatty Infrastructure, Inc. and Zurich American Insurance Company each appeal from opinions and awards entered by the North Carolina

Industrial Commission arising out of Mr. Tinajero's admittedly compensable injury by accident that resulted in Mr. Tinajero's being a quadriplegic. The primary issue on appeal is whether the Commission properly required defendants to pay the rental cost of reasonable handicapped accessible housing for Mr. Tinajero.

Applying *Derebery v. Pitt Cnty. Fire Marshall*, 318 N.C. 192, 347 S.E.2d 814 (1986), and *Espinosa v. Tradesource, Inc.*, ___ N.C. App. ___, 752 S.E.2d 153 (2013), we hold that the Commission did not abuse its discretion in making this award given that (1) Mr. Tinajero had no dwelling of his own that could be renovated to provide handicapped accessible housing, (2) defendants had continuously paid the full cost of housing for Mr. Tinajero since his injury by accident so long as he resided in a skilled nursing home or long-term care facility, and (3) the Commission found that living in such facilities was not in Mr. Tinajero's medical best interest. The Commission was free to conclude that defendants should not be allowed to condition their payment of Mr. Tinajero's housing costs on his agreeing to live in a facility that the Commission had found, based on competent evidence, was harmful to him physically and mentally and not in his medical best interests.

Facts

On 11 August 2008, Mr. Tinajero, an undocumented worker from Mexico, was employed by Balfour Beatty Infrastructure, Inc. While Mr. Tinajero was working on a barge, a crane cable broke and knocked him into the water. Immediately following the accident, Mr. Tinajero was transported to Pitt County Memorial Hospital where he was treated surgically for his injuries. Mr. Tinajero, who was 26 years old at the time of the hearing before the deputy commissioner, had suffered a C4-5 fracture dislocation, leaving him an ASIA A-B quadriplegic.

On 15 August 2008, Mr. Tinajero was transferred to Shepherd Center in Atlanta, Georgia for continuing treatment and rehabilitation. The Shepherd Center provides rehabilitative services for patients with significant neurologic injuries and illnesses, predominately spinal cord and brain injuries. Mr. Tinajero's condition required attendant care 24 hours per day, seven days per week.

Mr. Tinajero remained at the Shepherd Center until 5 December 2008. Mr. Tinajero's nurse case manager was unable to locate an appropriate apartment, but recommended against Mr. Tinajero's being placed in a nursing home upon his discharge from Shepherd Center because, in her experience, such a setting reinforces a "sick" mentality and leads to depression. A subsequent nurse case manager ultimately found one assisted

living facility willing to accept someone his age, Briarcliff Haven. Mr. Tinajero was then placed in the sub acute rehabilitation unit at Briarcliff Haven beginning on 5 December 2008.

On 27 February 2009, Mr. Tinajero filed an "Emergency Motion for Medical Treatment" with the Commission. In the motion, Mr. Tinajero asserted that his placement at Briarcliff Haven was not a suitable living environment and that any delay in relocating him would unjustifiably jeopardize his health. Mr. Tinajero requested that the Commission order defendants to pay for his placement in a suitable apartment with 24-hour attendant care.

In response to Mr. Tinajero's motion, the Commission issued an order on 20 March 2009 in which it referred the case to the regular docket for an expedited evidentiary hearing. Before the scheduled hearing date, the parties submitted a "Pre-Trial Agreement guided by Rule 16 of the North Carolina Rules of Civil Procedure." In the pre-trial agreement, the parties set forth a number of issues to be determined at the subsequent hearing. Included among these issues, Mr. Tinajero requested a determination whether defendants were obligated to provide adaptive housing, as well as what type of housing and attendant care were required. On 10 April 2010, Mr. Tinajero, on his own,

located an apartment across the street from Shepherd Center and moved into that apartment.

In the hearing before the deputy commissioner, Mr. Tinajero submitted a life care plan created by Michael Fryar. After reviewing Mr. Fryar's credentials, experience, and life care plan, the deputy commissioner determined that the report prepared by Mr. Fryar was not an objective and unbiased assessment of Mr. Tinajero's needs.

The deputy commissioner concluded that Mr. Tinajero was entitled to lifetime workers' compensation benefits. However, the deputy commissioner also determined that "[d]efendants [were] not obligated to purchase, construct or lease adaptive housing for [Mr. Tinajero] . . . ." According to the deputy commissioner, defendants were already providing Mr. Tinajero with suitable housing at Briarcliff Haven, and the medical evidence presented at the hearing failed to establish that it was necessary for Mr. Tinajero to leave the Briarcliff Haven facility.

Mr. Tinajero appealed to the Full Commission. On 13 September 2010, the Commission entered an opinion and award affirming in part, reversing in part, and modifying in part the deputy commissioner's opinion and award. With respect to Mr. Tinajero's housing, the Full Commission determined that Mr.

Tinajero's placement at Briarcliff Haven was not appropriate in that it endangered his physical and psychological health.[1] The Full Commission found that the evidence supported Mr. Tinajero's concerns about infections due to inadequate medical care, including medical orders not being followed regarding the timeliness of required intermittent catheterizations. Because of Briarcliff Haven's inability to assure that they could properly follow Mr. Tinajero's medical orders and timely perform the catheterizations, defendants had to contract with outside nurses to provide necessary nursing care.

The Full Commission further found that the greater weight of the lay and medical evidence established that living in Briarcliff Haven was having a negative impact on Mr. Tinajero's mental health. Based on the medical evidence, the Full Commission found that "it was in plaintiff's medical best interest for defendants to provide housing suitable for the maximum possible level of independence, which means someplace other than a skilled nursing home or long-term care facility."

---

[1]The Commission found that Mr. Tinajero's nurse case manager had specifically advised defendants that she did not recommend a nursing home because it would not optimize his learning and rehabilitation, would expose him to infections, and leads to depression. The Commission further noted that the case manager, when deposed, expressed her expert opinion that the best housing environment for plaintiff would be an apartment with 24-hour caregivers.

The Full Commission found that at the time of his injury by accident, Mr. Tinajero did not own a dwelling, but rather shared a rented apartment with two other people in New Bern, North Carolina. Mr. Tinajero, therefore, owned no property that could be made handicapped accessible for use by him in his post-injury condition. The Full Commission noted, however, that a 27 May 2010 progress report by his nurse case manager indicated he was living in an apartment. The Full Commission observed that defendants contended "that they provided suitable accommodations for plaintiff at Briarcliff Haven and that they are not obligated to pay for the lease of plaintiff's handicapped accessible apartment," but pointed out "*that for many years defendants have in effect paid for the entire cost of plaintiff's housing at both Shepherd Center and Briarcliff Haven*." (Emphasis added.)

The Full Commission, therefore, found:

> [B]ecause plaintiff has no dwelling that can be renovated to provide handicapped accessible housing, defendants are responsible for providing handicapped accessible housing for plaintiff. In this case, the greater weight of the evidence shows that plaintiff should be placed in housing that will allow him to have as much independence as possible. Reasonable handicapped accessible housing for plaintiff at this time is an apartment which can accommodate the necessary 24-hour daily attendant care for plaintiff. Although defendants are obligated to pay for the

> lease of such apartment, the selection of an apartment must be reasonable under the circumstances. An assessment by a certified life care planner of plaintiff's current living quarters is necessary to ascertain whether the apartment is appropriate handicapped accessible housing to accommodate plaintiff's physical needs.

With respect to Mr. Tinajero's request that defendants be required to provide adaptive transportation, the Full Commission found that Mr. Tinajero had never possessed a driver's license or owned a motor vehicle. Since his discharge from Shepherd Center, defendants had provided transportation through a private company for medical visits, therapy, recreation at the Shepherd Center, and social activities. In addition, defendants had assisted Mr. Tinajero in obtaining a pass for the public transportation system in Atlanta. The Full Commission found that two of Mr. Tinajero's doctors considered these transportation options to be reasonable for Mr. Tinajero. The Full Commission, therefore, determined that "[d]efendants are not obligated to purchase a vehicle for plaintiff, but would be obligated to modify any vehicle plaintiff purchases for his own transportation to make it accessible to plaintiff's needs. The Full Commission finds that the transportation services currently being provided plaintiff by defendants are reasonable."

Based on the findings of fact, the Full Commission concluded that Mr. Tinajero was totally disabled and entitled to

total disability compensation as well as medical treatment for his lifetime. The Full Commission also ordered that Mr. Tinajero receive attendant care 24 hours per day, seven days per week to be provided by qualified nursing personnel.

With respect to housing, the Full Commission concluded, citing *Derebery* and *Timmons v. N.C. Dep't of Transp.*, 123 N.C. App. 456, 473 S.E.2d 356 (1996), *aff'd per curiam*, 346 N.C. 173, 484 S.E.2d 551 (1997) (*Timmons I*):

> In this case, because plaintiff owns no dwelling that can be renovated to provide handicapped accessible housing, defendants are responsible for providing handicapped accessible housing for plaintiff. While the case law has held that the provision of ordinary housing is an expense of daily life to be paid from an injured worker's disability compensation, the additional cost of renting handicapped accessible housing is not an ordinary expense and should be borne by defendants, *who have up to this point continuously provided accommodated housing for plaintiff at Shepherd Center and Briarcliff Haven since plaintiff's compensable injury by accident.* Therefore, defendants shall pay the rental cost of reasonable handicapped accessible housing for plaintiff, which at this time is an apartment which can accommodate the necessary 24-hour daily attendant care for plaintiff.

(Emphasis added.)

The Full Commission concluded that "[d]efendants are not required to purchase or lease adaptive transportation for plaintiff or for his use. *McDonald v. Brunswick Elec.*

*Membership Corp.*, 77 N.C. App. 753, 336 S.E.2d 407 (1985)." Instead, the Full Commission concluded that defendants had already provided reasonable transportation, although if Mr. Tinajero purchased a vehicle, defendants were obligated to modify it to accommodate his disability.

The Full Commission agreed with the deputy commissioner that the "life care plan prepared by Michael Fryar in this case was not an unbiased, objective, fair, and balanced assessment." The Full Commission concluded that defendants were not required to pay for Mr. Fryar's report because it did not constitute a valid "'rehabilitative service'" within the meaning of N.C. Gen. Stat. § 97-2(19). The Full Commission concluded, however, that Mr. Tinajero was entitled to have defendants pay for the preparation of a life care plan "by a well-qualified and certified life care planner with long-standing experience dealing with catastrophic life care planning. Plaintiff is also entitled to an assessment by the life care planner of his current housing arrangements and whether the apartment is appropriate to accommodate plaintiff's physical needs."

Finally, the Full Commission concluded that "[d]efendants did not defend this claim in an unreasonable manner or without reasonable grounds and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. §97-88.1; *Sparks v.*

*Mountain Breeze Restaurant*, 55 N.C. App. 663, 286 S.E.2d 575 (1982)."

Defendants filed notice of appeal from the opinion and award of the Full Commission, and Mr. Tinajero cross-appealed. This Court dismissed the appeal as interlocutory since complete resolution of the medical issues in the case required, as the Full Commission had concluded, completion of a satisfactory life care plan for Mr. Tinajero. *See Tinajero v. Balfour Beatty Infrastructure, Inc.*, 214 N.C. App. 563, 714 S.E.2d 867, 2011 N.C. App. LEXIS 1832, 2011 WL 3570046 (2011) (unpublished).

On remand, the parties agreed to have Susan Caston assess Mr. Tinajero's needs although she was not a certified life care planner. Ms. Caston completed her report on 21 May 2012. Ms. Caston's rehabilitation plan addressed Mr. Tinajero's housing, transportation, and vocational/employment status. Mr. Tinajero filed a motion to depose Ms. Caston on 28 June 2012.

Mr. Tinajero also sought to take the deposition of V. Robert May, III, Chief Executive Officer of the International Commission on Health Care Certification, the international organization that provides accreditation for life care planners. Mr. Tinajero asserted that after the Full Commission had found that Mr. Fryar's life care plan did not conform to industry standards, that life care plan had been submitted to the

International Commission on Health Care certification for peer review. According to the motion, the blind evaluation of Mr. Fryar's plan had resulted in its being used as "'one of our preferred examples'" in Mr. May's presentations. Mr. Tinajero sought Mr. May's deposition for the limited purpose of authenticating the report reviewing Mr. Fryar's life care plan. The Full Commission denied Mr. Tinajero's motion to depose Ms. Caston and Mr. May in its opinion and award entered on 16 October 2012.

Pertinent to this appeal, the Full Commission's 16 October 2012 opinion and award found, based on Ms. Caston's evaluation, that "the geographical location of [Mr. Tinajero's] current apartment adequately [met] his needs to access the community." With respect to parking, the Commission found that "[i]nasmuch as plaintiff cannot legally drive in the United States and does not now own a handicap-accessible vehicle, it is presently irrelevant whether his apartment provides a parking space for him."

As for Mr. Tinajero's housing, the Full Commission found:

> Placing plaintiff in a position which maximizes his independence is a goal repeatedly expressed throughout the medical evidence in this case. While plaintiff's current living situation is preferable to a skilled nursing home or long-term care facility, plaintiff cannot reach the maximum possible level of independence in a housing

> situation in which he cannot maneuver or fully access the kitchen, bathroom, and laundry room. Therefore, it is reasonable and medically necessary that an occupational therapist with experience in addressing accessibility issues for the catastrophically injured be consulted to identify and make recommendations to the parties regarding accessibility options for plaintiff given his current functional status.

Mr. Tinajero filed a notice of appeal of the 16 October 2012 opinion and award on 18 October 2012 and of the interim 13 September 2010 order in a supplemental notice of appeal on 19 November 2012. Defendants filed notice of appeal of the 16 October 2012 order on 30 October 2012, and supplemental notice of appeal of the 13 September 2010 order on 30 November 2012.

## Discussion

Our review of a decision of the Industrial Commission "is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the conclusions of law." *Cross v. Blue Cross/Blue Shield*, 104 N.C. App. 284, 285-86, 409 S.E.2d 103, 104 (1991). "The findings of the Commission are conclusive on appeal when such competent evidence exists, even if there is plenary evidence for contrary findings." *Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 353, 524 S.E.2d 368, 371 (2000). As the fact-finding body, "'[t]he Commission is the sole judge of the

credibility of the witnesses and the weight to be given their testimony.'" *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552 (2000) (quoting *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998)).

I.   Defendants' Appeal

A.   Timeliness of Appeal

As a preliminary matter, we address Mr. Tinajero's contention that defendants did not timely appeal the entry of the 13 September 2010 opinion and award and, therefore, this Court lacks jurisdiction to consider defendants' arguments regarding the Commission's requirement that they pay for Mr. Tinajero's housing.  Mr. Tinajero points out that defendants' 30 October 2012 notice of appeal stated only that defendants were appealing from the 16 October 2012 opinion and award.

Defendants' timely first notice of appeal did not mention the 13 September 2010 opinion and award.  Defendants' supplemental notice of appeal, indicating that they were also appealing the 13 September 2010 opinion and award, was filed more than 30 days after defendants' receipt of the final opinion and award of the Commission.  *See* N.C.R. App. P. 3(c)(1), (2) (providing that in order to be timely, notice of appeal must be filed either within 30 days of entry of judgment if the judgment

was served with three days, or within 30 days of service to a party if service was not effected within three days).

We note that while Rule 3(d) of the Rules of Appellate Procedure provides that the notice of appeal "shall designate the judgment or order from which appeal is taken," N.C. Gen. Stat. § 1-278 (2013) provides: "Upon an appeal from a judgment, the court may review any intermediate order involving the merits and necessarily affecting the judgment." This Court has held that even when a notice of appeal fails to reference an interlocutory order, in violation of Rule 3(d), appellate review of that order pursuant to N.C. Gen. Stat. § 1-278 is proper under the following circumstances: (1) the appellant must have timely objected to the order; (2) the order must be interlocutory and not immediately appealable; and (3) the order must have involved the merits and necessarily affected the judgment. *Brooks v. Wal-Mart Stores, Inc.*, 139 N.C. App. 637, 641, 535 S.E.2d 55, 59 (2000). All three conditions must be met. *Id.* at 642, 535 S.E.2d at 59.

Here, defendants immediately objected to the 13 September 2010 opinion and award by appealing it. *See Sellers v. FMC Corp.*, 216 N.C. App. 134, 139, 716 S.E.2d 661, 665 (2011) (holding, in workers' compensation case, that claim in reply brief that Commission's prior ruling was in error was sufficient

objection to meet first requirement of N.C. Gen. Stat. § 1-278). In addition, this Court already concluded, when dismissing defendants' appeal, that the order was interlocutory and not immediately appealable. *Tinajero*, 214 N.C. App. 563, 714 S.E.2d 867, 2011 N.C. App. LEXIS 1832, 2011 WL 3570046 (2011).

Finally, the 13 September 2010 opinion and award involved the merits and necessarily affected the final opinion and award because the 13 September 2010 opinion and award substantially decided the primary issues in contention, including Mr. Tinajero's housing and transportation. Since defendants' appeal of the 13 September 2010 opinion and award meets the requirements of N.C. Gen. Stat. § 1-278, this Court has jurisdiction to consider defendants' arguments. *See, e.g., Yorke v. Novant Health, Inc.*, 192 N.C. App. 340, 348, 666 S.E.2d 127, 133 (2008) (holding that even though notice of appeal referenced only final judgment and post-trial order denying motion for new trial, Court had jurisdiction to review denial of motion for directed verdict under N.C. Gen. Stat. § 1-278 when defendant objected at trial and denial of directed verdict involved merits and affected final judgment); *Brooks*, 139 N.C. App. at 642-43, 535 S.E.2d at 59 (finding requisites of N.C. Gen. Stat. § 1-278 satisfied when directed verdict dismissing all counterclaims against co-defendants was objected to at

trial, was implicated by motion specifically appealed, was interlocutory, and order deprived defendant of potential claims).

  B.  Commission's Requirement that Defendants Pay for Plaintiff's Housing

Defendants first contend that the Commission erred in ordering that defendants "provide handicapped accessible housing for [Mr. Tinajero], which at [that] time [was] a handicapped accessible apartment that [could] accommodate the necessary 24-hour daily attendant care for plaintiff. Defendants shall pay for the lease of such apartment, but the selection of an apartment must be reasonable under the circumstances." Defendants contend that rent is an ordinary expense of life required to be paid from wages.

Because Mr. Tinajero is totally and permanently disabled, N.C. Gen. Stat. § 97-29 (2007) controls, and "compensation, including medical compensation, shall be paid for by the employer during the lifetime of the injured employee." Medical compensation, in turn, was defined in N.C. Gen. Stat. § 97-2(19) (2007) as:

> medical, surgical, hospital, nursing, and rehabilitative services, and medicines, sick travel *and other treatment*, including medical and surgical supplies, as may reasonably be required to effect a cure or give relief and for such additional time as, in the judgment of the Commission, will tend to lessen the period of disability . . . .

(Emphasis added.)

In *Derebery*, our Supreme Court, in applying a prior version of N.C. Gen. Stat. § 97-29, construed what compensation falls within the scope of "other treatment." 318 N.C. at 199-200, 347 S.E.2d at 819. The plaintiff in *Derebery* had presented evidence that he had lived with his parents in their rented home and that the owner of the home refused to allow the plaintiff's family to modify the house structurally to accommodate the plaintiff's wheelchair. *Id.* at 198, 347 S.E.2d at 818. The Commission had ordered the defendants, pursuant to N.C. Gen. Stat. § 97-29, to provide the plaintiff with a wheelchair-accessible place to live. *Id.* at 195-96, 347 S.E.2d at 816-17.

This Court reversed, holding that the provision requiring payment for "'other treatment or care'" could not "be reasonably interpreted to extend the employer's liability to provide a residence for an injured employee." *Derebery v. Pitt Cnty. Fire Marshall*, 76 N.C. App. 67, 72, 332 S.E.2d 94, 97 (1985). The Supreme Court reversed this Court, holding "that the employer's obligation to furnish 'other treatment or care' may include the duty to furnish alternate, wheelchair accessible housing." 318 N.C. at 203-04, 347 S.E.2d at 821. Specifically, "an employer must furnish alternate, wheelchair accessible housing to an injured employee where the employee's existing quarters are not

satisfactory and for some exceptional reason structural modification is not practicable." *Id.* at 203, 347 S.E.2d at 821.

Defendants, in this case, however, urge this Court to follow Justice Billings' dissent in *Derebery*, in which she concluded that housing is an ordinary necessity of life that the employee is required to pay for out of his disability compensation. *Id.* at 205-06, 347 S.E.2d at 822 (Billings, J., dissenting). Defendants contend that this Court previously adopted that dissent in *Timmons I*.

The plaintiff in *Timmons I* was a paraplegic who initially lived with his parents. 123 N.C. App. at 458, 473 S.E.2d at 357. The defendant paid to modify the plaintiff's parents' home to make it accessible for the plaintiff's use. *Id.* Subsequently, the plaintiff moved to a handicapped-accessible apartment where he lived for approximately eight and a half years. *Id.* When the rent increased, the plaintiff moved back to his parents' home. *Id.* Ultimately, however, unlike the plaintiff in *Derebery* or Mr. Tinajero in this case, the plaintiff in *Timmons I* returned to full-time employment with the defendant. *Id.* He was able to purchase land and requested that the Commission order the defendant to finance the construction of a new, handicapped-accessible home on that land. *Id.* at 458-

59, 473 S.E.2d at 357-58. The Commission, however, refused to order that the defendant pay for the construction of a new house, but rather ordered only that the defendant pay the expense of making the plaintiff's new home handicapped accessible. *Id.* at 459, 473 S.E.2d at 358.

Both the plaintiff and the defendant appealed to this Court. On appeal, the defendant argued that it should not be required to provide any assistance in constructing the plaintiff's residence. *Id.* at 460, 473 S.E.2d at 358. The plaintiff in turn contended that the defendant should be required to bear the entire cost of constructing his residence. *Id.* This Court affirmed the Commission, concluding based on *Derebery*, that "the Commission's finding that the accommodations at plaintiff's parents' home are no longer suitable supports its conclusion that plaintiff is entitled to have defendant pay for adding to plaintiff's new home those accessories necessary to accommodate plaintiff's disabilities." *Id.* at 461, 473 S.E.2d at 359 (internal quotation marks omitted).

However, the Court rejected the plaintiff's argument that *Derebery* required the defendant to pay the entire cost of constructing the plaintiff's residence:

> As pointed out by Justice (later Chief Justice) Billings in her dissent in *Derebery*, the expense of housing is an ordinary necessity of life, to be paid from

> the statutory substitute for wages provided by the Worker's Compensation Act. The costs of modifying such housing, however, to accommodate one with extraordinary needs occasioned by a workplace injury, such as the plaintiff in this case, is not an ordinary expense of life for which the statutory substitute wage is intended as compensation. Such extraordinary and unusual expenses are, in our view, properly embraced in the "other treatment" language of G.S. § 97-25, which the basic costs of acquisition or construction of the housing is not.

*Id.* at 461-62, 473 S.E.2d at 359. Accordingly, the Court affirmed the Commission's opinion and award that defendant only "'pay for adding to plaintiff's new home those accessories necessary to accommodate plaintiff's disabilities.'" *Id.* at 462, 473 S.E.2d at 359.

From that unanimous decision of this Court, the defendant filed a petition for discretionary review, asking the Supreme Court to consider "[w]hether an employer [was] required by G.S. 97-25 to pay the cost of construction of a house, in whole or in part, for an employee who is a paraplegic due to a work related injury where the employee has returned to full-time employment and the employer has previously modified one house for employee's use." After the Supreme Court allowed the petition, *Timmons v. N.C. Dep't. of Transp.*, 344 N.C. 739, 478 S.E.2d 13 (1996), the defendant urged the Court to overturn *Derebery* or to "consider the well reasoned dissent of Justice Billings in

*Derebery* and perhaps now adopt it as the rule of law." The plaintiff, however, argued that *Derebery* mandated payment for the cost of the entirety of the construction of his home.

The Supreme Court affirmed this Court's order in a per curiam decision. *Timmons v. N.C. Dep't of Transp.*, 346 N.C. 173, 484 S.E.2d 551 (1997). "'*Per curiam* decisions stand upon the same footing as those in which fuller citations of authorities are made and more extended opinions are written.'" *Total Renal Care of N.C., LLC v. N.C. Dep't of Health & Human Servs.*, 195 N.C. App. 378, 386, 673 S.E.2d 137, 143 (2009) (quoting *Bigham v. Foor*, 201 N.C. 14, 15, 158 S.E.2d 548, 549 (1931)). Although defendants urge us to adopt a reading of *Timmons* by which Justice Billings' dissent in that case has been adopted as the governing rule of law in North Carolina, our Supreme Court's rejection of that argument on discretionary review in *Timmons I* precludes such a reading of the case.

This Court has since addressed both *Derebery* and *Timmons I* in a case in which the parties both made arguments nearly identical to those in this case:

> As a preliminary point, we note that the parties' arguments assume rules that are rigid and broadly applicable in the cases discussed above. A reading of section 97-25[2]

---

[2]This Court noted in *Espinosa* that *Derebery*'s construction of the phrase "other treatment" applies equally to cases under N.C. Gen. Stat. § 97-29 and to cases under N.C. Gen. Stat. § 97-

makes it clear, however, that an award of "other treatment" is in the discretion of the Commission. 2005 N.C. Sess. Laws ch. 448, § 6.2 ("[T]he [Commission] may order such further treatments as may in the discretion of the Commission be necessary."). Section 97-2(19), as written at the time of Plaintiff's injury, further explained that the *type* of medical compensation the employer must pay is "*in the judgment of the Commission*" as long as it is "reasonably . . . required to effect a cure or give relief." 1991 N.C. Sess. Laws Ch. 703, § 1. The Supreme Court's decision in *Derebery* and our own decision in *Timmons* represent the outer limits of the Commission's authority under those statutes, not entirely new rules to be followed in place of or in addition to the statutes created by our legislature.

*Espinosa*, ___ N.C. App. at ___, 752 S.E.2d at 160-61.

In *Espinosa*, the Commission had determined that the defendants should pay the pro rata difference between the rent required for the plaintiff's new, handicapped-accessible home and the rent the plaintiff had to pay as an ordinary expense of life before his injury. *Id.* at ___, 752 S.E.2d at 161. In upholding the Commission's decision, this Court explained:

The Commission sensibly reasoned that living arrangements constitute an ordinary expense of life and, thus, should be paid by the employee. The Commission also recognized, however, that a change in such an expense, which is necessitated by a compensable injury, should be compensated for by the employer. Because Plaintiff did not own his own home in this case, he was required to

---

25. ___ N.C. App. at ___ n.6, 752 S.E.2d at 159 n.6

find new rental accommodations that would meet his needs. In this factual circumstance, it was appropriate for the Commission to require the employer to pay the difference between the two.

While circumstances may occur in which an employer is required to pay the entire cost of the employee's adaptive housing, neither the Supreme Court's opinion in *Derebery* nor our holding in *Timmons* support Plaintiff's assertion that such a requirement is necessary *whenever* an injured worker does not own property or a home. Such a ruling would reach too far.

*Id.* at ___, 752 S.E.2d at 161.

In this case, in contrast, the Commission concluded that defendants should pay the full cost of Mr. Tinajero's adaptive house. Consistent with *Derebery*, *Timmons I*, and *Espinosa*, the Commission noted first that "because plaintiff owns no dwelling that can be renovated to provide handicapped accessible housing, defendants are responsible for providing handicapped accessible housing for plaintiff. While the case law has held that the provision of ordinary housing is an expense of daily life to be paid from an injured worker's disability compensation, the additional cost of renting handicapped accessible housing is not an ordinary expense . . . ."

While defendants urge that they should only have to pay that portion of the rent that exceeds the amount Mr. Tinajero was paying prior to his injury -- the approach adopted by the

Commission in *Espinosa* -- the Commission, in this case, although acknowledging that Mr. Tinajero, prior to his injury, had shared the cost of an apartment with two other people, rejected defendants' contention. The Commission pointed out that defendants were fully willing to pay "for many years . . . the entire cost of plaintiff's housing at both Shepherd Center and Briarcliff Haven." Moreover, while Mr. Tinajero was housed at Briarcliff Haven, defendants also had to pay for outside nursing care to supplement the care provided by the facility because the facility was consistently unable to "properly follow plaintiff's medical orders and timely perform his intermittent catheterizations." Thus, as the Commission found, defendants were completely willing to pay the cost of a skilled nursing home or long-term care facility, even if they had to also pay for additional outside nursing care, but they were unwilling to pay the cost of leasing an apartment.

The Commission expressly found that the housing chosen by defendants, Briarcliff Haven, was not suitable in that (1) living in that facility was "having a negative impact on [Mr. Tinajero's] mental health"; (2) the medical care he was receiving in the facility was inadequate; and (3) moving Mr. Tinajero from the nursing facility to an apartment served the interests of the repeatedly stated medical priority of

"[p]lacing [Mr. Tinajero] in a position to maximize his independence . . . ." Although defendants argue with the Commission's findings that Mr. Tinajero needed to leave Briarcliff Haven, those findings are supported by ample evidence in the record.

Consequently, defendants' position before the Commission was that they would pay fully for housing that the Commission determined was not in Mr. Tinajero's best medical interests and was not suitable, but they would not pay for housing -- in the form of an apartment with attendant care -- that the Commission found, based on competent evidence, was in Mr. Tinajero's best medical interests. In other words, defendants conditioned their full payment of housing costs on Mr. Tinajero's accepting housing contrary to his medical interests.

Under the particular circumstances of this case, we hold that the Commission properly exercised its discretion in concluding that defendants should not be allowed to force such a choice on an injured employee. Rather, under the circumstances found by the Commission, the Commission acted within its authority as set out in *Derebery*, *Timmons I*, and *Espinosa*, in determining that because defendants had previously been willing to pay the full cost for Mr. Tinajero's housing in a skilled nursing facility, which was not in Mr. Tinajero's medical best

interests, they were obligated to "pay the rental cost of reasonable handicapped accessible housing," which was in Mr. Tinajero's medical best interests.  We, therefore, affirm the Commission's ruling on Mr. Tinajero's housing.[3]

## II.  Plaintiff's Appeal

### A.   Denial of Mr. Tinajero's Request for Depositions

Mr. Tinajero contends that the Commission erred in refusing to allow him to depose Ms. Caston and Mr. May.  Under N.C. Gen. Stat. § 97-85(a) (2013), the Full Commission may, upon application by a party, "receive further evidence."  However, a party "does not have a substantial right to require the Commission to hear additional evidence, and the duty to do so only applies if good ground is shown." *Allen v. Roberts Elec. Contractors*, 143 N.C. App. 55, 65-66, 546 S.E.2d 133, 141 (2001).  "'[T]he question of whether to reopen a case for the taking of additional evidence rests in the sound discretion of the Industrial Commission, and its decision will not be disturbed on appeal in the absence of an abuse of discretion.'" *Porter v. Fieldcrest Cannon, Inc.*, 133 N.C. App. 23, 29, 514

---

[3]Defendants also argue that Mr. Tinajero could not lawfully lease an apartment in Atlanta because he is undocumented. Defendants contend that they cannot legally pay rent for an apartment that Mr. Tinajero cannot lawfully lease.  Defendants cite no legal authority for this position and, therefore, we do not address it.

S.E.2d 517, 522 (1999) (quoting *Schofield v. Tea Co.*, 299 N.C. 582, 596, 264 S.E.2d 56, 65 (1980)).

1. Susan Caston

With respect to Ms. Caston, Mr. Tinajero argues more specifically that his due process rights and the Rules of the Industrial Commission were violated when the Full Commission admitted Ms. Caston's report, but denied Mr. Tinajero's motion to depose Ms. Caston.  Our courts have long held, based on principles of due process and court procedure, that "[w]here the Commission allows a party to introduce new evidence which becomes the basis for its opinion and award, it must allow the other party the opportunity to rebut or discredit that evidence." *Goff v. Foster Forbes Glass Div.*, 140 N.C. App. 130, 134-35, 535 S.E.2d 602, 605-06 (2000).

In *Allen v. K-Mart*, 137 N.C. App. 298, 302, 528 S.E.2d 60, 63 (2000), the defendants argued that the Commission had abused its discretion in considering two independent medical examinations as evidence without permitting the defendants to depose or cross-examine either physician.  This Court agreed, holding that "[d]efendants should have been allowed the opportunity to discredit the doctors' reports." *Id.*

This Court observed that "[t]he opportunity to be heard and the right to cross-examine another party's witnesses are

tantamount to due process and basic to our justice system." *Id.* at 304, 528 S.E.2d at 64. Based on these principles, the Court "agree[d] with defendants that the Commission manifestly abused its discretion by allowing significant new evidence to be admitted but denying defendants the opportunity to depose or cross-examine the physicians, or requiring plaintiff to be examined by experts chosen by defendants." *Id.* The Court, therefore held "that where the Commission allows a party to introduce new evidence which becomes the basis for its opinion and award, it must allow the other party the opportunity to rebut or discredit that evidence." *Id.*, 528 S.E.2d at 64-65.

Here, the Commission specifically ordered that the parties agree on a person to prepare a life care plan and conduct an assessment of Mr. Tinajero's current living arrangements at defendants' expense. This Court concluded that the prior appeal was interlocutory and dismissed it so that additional proceedings related to the life care plan could take place. The parties ultimately agreed upon Susan Caston as the person to conduct the further assessment. In denying Mr. Tinajero's motion to depose Ms. Caston following completion of her report, the Commission found "that her report provides sufficient information for the Full Commission to rule upon the remaining issues in the case, and therefore, that a deposition at this

point would only serve to further delay the entry of a final Opinion and Award."

The Commission then ordered that "plaintiff's motion to depose Ms. Caston is hereby DENIED, and Ms. Caston's report is received into evidence." In the opinion and award that followed this ruling, the Commission repeatedly referenced Ms. Caston's report as the support for various findings of fact. Further, even though Ms. Caston had not addressed all of the recommendations made by Mr. Tinajero's life care planner, Mr. Fryar, and Mr. Tinajero, in his motion to depose Ms. Caston, had indicated that a deposition was necessary to obtain her opinion regarding the appropriateness of those recommendations, the Commission denied those recommendations. Mr. Tinajero was given no opportunity to establish through Ms. Caston that those recommendations were appropriate.

This case is indistinguishable from *Allen* and *Goff*. Defendants, however, argue that Mr. Tinajero waived his request for a deposition and agreed to the Commission's proceeding without deposition of the experts in the case. Defendants point to an 8 August 2012 letter from Mr. Tinajero's counsel to the Full Commission that highlighted Mr. Tinajero's need for a speedy resolution of his case and requested a ruling from the

Commission on the motion for depositions to further the final resolution of the case:

> *What the Plaintiff prays for now is the most expeditious ruling possible.* We respectfully request that you promptly enter an order allowing us to notice the defense with the depositions outlined in our motion. Having more information and an expanded opinion from Caston can only help the Commission make a better ruling without causing further delays. . . . We were disappointed that Caston's report did not have the quality and depth that a quadriplegic plaintiff deserves -- given the large number of spinal cord injury protocols to be followed -- so our intention was to flesh out those opinions through an expedited deposition.
>
> *Otherwise, we respectfully request that our motion be denied and that the Commission rule on the balance of the case as expeditiously as possible.* We venture to guess that Zurich American Insurance Co. will continue to appeal the case back to the Court of Appeals, and we would like to get that process underway as soon as possible. We do not want any further delay to be experienced by this very young man who suffers the consequences of this drawn out legal proceeding.

(Emphasis added.)

We hold that this letter -- essentially simply asking the Commission to allow or deny the motion as soon as possible -- cannot reasonably be read as a waiver of Mr. Tinajero's request to take the deposition of Ms. Caston. Although the language of the letter suggests frustration with the delay, it does not

suggest that Mr. Tinajero was acquiescing in the admission of the contents of Ms. Caston's report without objection.

In sum, Mr. Tinajero properly requested leave to take Ms. Caston's deposition once he received Ms. Caston's report.  Under *Allen* and *Goff*, the Commission erred in admitting Ms. Caston's report without allowing Mr. Tinajero an opportunity to depose Ms. Caston.  We, therefore, reverse the 16 October 2012 opinion and award and remand for further proceedings, including the entry of a new opinion and award following the deposition of Ms. Caston.

### 2.  V. Robert May

Mr. Tinajero also argues that the Commission erred in denying his request to depose Mr. May.  As to this request, Mr. Tinajero's motion asked that Mr. May's deposition be taken "for the limited purpose of authenticating the attached submissions and resulting report of the peer review of [Mr. Tinajero's] life care plan [created by Mr. Fryar] by the International Commission on Health Care Certification."  The Commission found as to that motion that Mr. Tinajero sought "to rehabilitate Mr. Fryar and his life care plan, an issue that has already been ruled upon by the Commission."

We cannot conclude that the Commission abused its discretion in denying a request to take a deposition for the

sole purpose of asking the Commission to reconsider a prior ruling. Nevertheless, because we acknowledge that it is possible Ms. Caston's testimony may provide a basis for renewing the motion, our holding is without prejudice to Mr. Tinajero's filing a new motion to take Mr. May's deposition following Ms. Caston's deposition.

B.   Transportation

We next address Mr. Tinajero's contention that the Commission erred in refusing to order defendants to provide Mr. Tinajero with the use of an adaptive van. The Commission made the following conclusion of law regarding Mr. Tinajero's transportation needs:

> Defendants are not required to purchase or lease adaptive transportation for plaintiff or for his use. *McDonald v. Brunswick Elec. Membership Corp.*, 77 N.C. App. 753, 336 S.E.2d 407 (1985). Defendants have provided reasonable transportation for plaintiff through a private transportation service, access to public transportation, and a motorized wheelchair and shall continue to do so. N.C. Gen. Stat. §97-2(19). Should plaintiff purchase his own vehicle, defendants are obligated to modify the same to accommodate plaintiff's disability. *McDonald v. Brunswick Elec. Membership Corp.*, *supra*, at 753, 336 S.E.2d at 407.

Mr. Tinajero argues that the Commission improperly relied upon *McDonald*. While we agree with Mr. Tinajero that *McDonald* can no longer stand for the proposition that an employer may

never be required to provide a plaintiff with a specially-equipped van, we do not agree that the Commission applied such a rigid rule.

In *McDonald*, 77 N.C. App. at 753, 336 S.E.2d at 407, the plaintiff suffered a compensable injury by accident arising out of his employment that resulted in the amputation of both of his legs and his left arm. The Commission concluded that the defendants were required to provide the plaintiff with a specially-equipped van on the grounds that it was a reasonable and necessary rehabilitative service within the meaning of N.C. Gen. Stat. § 97-29. 77 N.C. App. at 754, 366 S.E.2d at 407.

On appeal, this Court reversed. Relying solely on *Derebery v. Pitt Cnty. Fire Marshall*, 76 N.C. App. 67, 332 S.E.2d 94 (1985), this Court "conclude[d] that neither the phrase 'other treatment or care' nor the term 'rehabilitative services' in G.S. 97-29 can reasonably be interpreted to include a specially-equipped van. This language in the statute plainly refers to services or treatment, rather than tangible, non-medically related items such as a van; thus, it would be contrary to the ordinary meaning of the statute to hold that it includes the van purchased by plaintiff." *McDonald*, 77 N.C. App. 756-57, 336 S.E.2d at 409.

Of course, subsequently, our Supreme Court reversed this Court's decision on which *McDonald*'s holding was founded and expressly rejected the reasoning adopted by *McDonald*. Following the Supreme Court's decision in *Derebery*, there can no longer be a black letter rule that a defendant cannot be required to provide a specially-adapted van and can only be required to modify a van already owned by a plaintiff. This Court subsequently recognized that *McDonald* was superseded by *Derebery* in *Grantham v. Cherry Hosp.*, 98 N.C. App. 34, 39-40, 389 S.E.2d 822, 825 (1990).

Under the Supreme Court's decision in *Derebery*, an employer may be required to provide adaptive transportation, including use of a specially-adapted van, if the plaintiff's existing access to transportation is not satisfactory and "for some exceptional reason" modification of those modes of transportation to make it satisfactory "is not practicable." 318 N.C. at 203, 347 S.E.2d at 821. Our review of the Commission's opinion and award indicates that the Commission made the findings required by *Derebery* even though it cited *McDonald* as support for its conclusion.

The Commission found regarding Mr. Tinajero's transportation needs:

> Plaintiff has never possessed a driver's
> license or owned a motor vehicle. Since his

> discharge from Shepherd Center, defendants have provided transportation for plaintiff through a private company for medical visits, therapy, and recreation at Shepherd Center, and social activities. Defendants also assisted plaintiff in obtaining his MARTA pass for the public transportation system in Atlanta. He has an electric wheelchair he uses for local trips. Dr. Bilsky and Dr. Scelza considered these reasonable transportation options for plaintiff. Defendants are not obligated to purchase a vehicle for plaintiff, but would be obligated to modify any vehicle plaintiff purchases for his own transportation to make it accessible to plaintiff's needs. The Full Commission finds that the transportation services currently being provided plaintiff by defendants are reasonable.

In other words, the Commission found that Mr. Tinajero's access to transportation is satisfactory at this time. This finding is supported by competent evidence and, therefore, is binding. Under *Derebery* and given this finding, the Commission was not required to mandate that defendants purchase a vehicle for Mr. Tinajero. We, therefore, affirm this portion of the Commission's opinion and award.[4]

C. Taxation of Attorneys' Fees and Costs

Mr. Tinajero next contends that the Full Commission erred by failing to tax defendants with attorneys' fees for

---

[4]We note that on remand, the Commission's decision regarding transportation may be affected by Mr. Tinajero's deposition of Ms. Caston since her report specifically addressed transportation.

unreasonably pursuing their defense of this action before the Commission pursuant to N.C. Gen. Stat. § 97-88.1 (2013). Under that statute, "[i]f the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the *whole cost* of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them." *Id.* (emphasis added).

The purpose of N.C. Gen. Stat. § 97-88.1 is to prevent "'stubborn, unfounded litigiousness' which is inharmonious with the primary purpose of the Workers' Compensation Act to provide compensation to injured employees." *Beam v. Floyd's Creek Baptist Church*, 99 N.C. App. 767, 768, 394 S.E.2d 191, 192 (1990) (quoting *Sparks*, 55 N.C. App. at 664, 286 S.E.2d at 576). The statute's reference to the Commission's assessing "the whole cost" reveals the legislature's intent that the Commission would decide this issue at the end of the litigation when "the whole cost" would be known.

Here, the Commission concluded in its interlocutory order of 13 September 2010 with regard to defendants' liability under N.C. Gen. Stat. § 97-88.1:

> Defendants did not defend this claim in an unreasonable manner or without reasonable grounds and, therefore, plaintiff is not entitled to attorney's fees pursuant to N.C.

Gen. Stat. §97-88.1; *Sparks v. Mountain Breeze Restaurant*, 55 N.C. App. 663, 286 S.E.2d 575 (1982).

Especially since the Commission's 13 September 2010 opinion and award ordered the preparation of a life care plan, the Commission should not, at that stage, have decided whether Mr. Tinajero was entitled to attorneys' fees under N.C. Gen. Stat. § 97-88.1. Instead, the proper point in the proceedings for the Commission to address this issue was in the Commission's final disposition of the case in its 16 October 2012 order.

We, therefore, reverse the Commission's determination that Mr. Tinajero is not entitled to fees under N.C. Gen. Stat. § 97-88.1. On remand, following the taking of Ms. Caston's deposition, the Commission shall revisit whether such an award is appropriate and, if so, what the amount of any award should be, in its final opinion and award.

Mr. Tinajero further argues that the Commission erred by failing to tax all costs against defendants, including the costs related to Mr. Tinajero's certified life care plan. The Commission concluded in its 13 September 2010 opinion and award:

> The report and life care plan prepared by Michael Fryar in this case was not an unbiased, objective, fair, and balanced assessment and is not accepted by the Full Commission as such. . . . Defendants are not required to pay for Mr. Fryar's report, because the same does not constitute a valid

"rehabilitative service" within the meaning
of N.C. Gen. Stat. §97-2(19).

Because we have remanded for the taking of Ms. Caston's deposition and Mr. Tinajero has indicated his intent to question Ms. Caston regarding various components of Mr. Fryar's plan, the Commission should, following that deposition, revisit whether Mr. Fryar's report constituted a valid "rehabilitative service" and whether defendants should pay for the cost of the preparation of that report.

Finally, Mr. Tinajero argues that defendants should be assessed attorney's fees for pursuing the prior interlocutory appeal. As Mr. Tinajero acknowledges, he requested in his motion to dismiss filed with this Court in the prior appeal that this Court instruct the Commission on remand to determine what amount of attorneys' fees and costs should be taxed against defendants as sanctions. Although this Court granted the motion to dismiss, it did not address Mr. Tinajero's request for attorneys' fees and costs and, therefore, implicitly denied that request. We are bound by the prior panel's failure to award attorneys' fees and costs based on the interlocutory appeal and cannot, in this later appeal, determine that fees and costs should have been awarded.

## Conclusion

In sum, we affirm the Commission's determination that defendants were required to provide Mr. Tinajero with handicapped accessible housing and affirm its determination that defendants currently are providing reasonable transportation for Mr. Tinajero. We reverse the Commission's 16 October 2012 opinion and award for failure to allow Mr. Tinajero to take the deposition of Ms. Caston and remand to allow the taking of that deposition and entry of a new opinion and award taking into account not only Ms. Caston's report but also her deposition.

Finally, we reverse the Commission's determination that Mr. Tinajero was not entitled to attorneys' fees under N.C. Gen. Stat. § 97-88.1 and was not entitled to have defendants pay for the cost of the preparation of Mr. Fryar's life care plan and remand for a determination of those two issues at the completion of the proceedings on remand.

Affirmed in part; reversed in part.

Judge ELMORE concurs.

Judge DILLON concurs in part and dissents in part by separate opinion.

NO. COA13-9

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

SANTOS TINAJERO,
    Employee,
    Plaintiff,

v.                                  North Carolina
                                    Industrial Commission
                                    I.C. No. 091464

BALFOUR BEATTY INFRASTRUCTURE, INC.,
    Employer,

ZURICH AMERICAN INSURANCE COMPANY,
    Carrier,
    Defendants.


    DILLON, Judge, concurring in part and dissenting in part.


    I agree with the majority on all issues except with regard to the issue addressed in Section II.B. of its opinion, which addresses the Full Commission's requirement that Defendants pay for Plaintiff's housing.  Accordingly, I concur, in part, and dissent, in part.

    On the housing issue, Defendants contend, in part, that the Commission erred by ordering Defendants to pay for the entire lease expense of Plaintiff's handicapped accessible apartment. The Commission ordered Defendants to pay, *inter alia*, weekly, wage-replacement benefits of "$496.77 for the remainder of Plaintiff's lifetime as provided by N.C. Gen. Stat. § 97-31(17)" **and** the full amount of Plaintiff's lease payments for a

handicapped accessible apartment as "other treatment" under N.C. Gen. Stat. § 97-25. The majority concluded that the Commission did not err. I agree with the majority that Defendants are, indeed, obligated to provide benefits to cover Plaintiff's lease payment in this case. However, I believe a *portion* of the lease payment is being provided through the weekly benefits Defendants are paying to cover Plaintiff's ordinary expenses of life; and, therefore, I believe the Commission erred by classifying Plaintiff's *entire* lease payment as "other treatment" under G.S. 97-25.

It is certainly within the discretion of the Commission to make an award for "other treatment" under G.S. 97-25. *Espinosa v. Tradesource, Inc.*, __ N.C. App. __, __, 752 S.E.2d 153, 159 (2013). However, the Commission's discretion to make such an award is limited to that which is reasonably "required to effect a cure or give relief[.]" *Id*. at __, 752 S.E.2d at 163 (citations omitted). In this case, Plaintiff's accident required his housing arrangement to be modified. Prior to the accident, he rented an apartment, living with two other people. Now, he requires a more expensive apartment that is handicapped accessible and which allows for 24-hour attendant care. I believe in this case that some portion of Plaintiff's lease

payments is an ordinary expense of life and some portion is an expense designed to "effect a cure and give relief." By classifying the entire amount as "other treatment," the Commission is, in effect, providing Plaintiff a double recovery of that portion of his lease expense which represents an ordinary expense of life, since he is already being compensated for this portion from the weekly benefits. I believe this is unreasonable and is not a result that was intended by our General Assembly or required by decisions of our appellate courts.

The majority differentiates this case from *Espinosa*, *supra*, in which we affirmed the Full Commission's approach to classify a portion of the injured worker's adaptive housing as an ordinary expense of life. Specifically, the majority points out that, unlike *Espinosa*, Defendants in this case were paying Plaintiff's entire housing expenses while Plaintiff was housed at a long-term care facility and were willing to continue paying his entire housing costs if he remained at the long-term care facility, rather than move into an apartment. Whether Defendants were, in fact, legally obligated to pay the entire housing cost of a nursing home or long-term care facility for Plaintiff is not before this Court, since the Commission has

determined that Plaintiff should live in an apartment. However, I do not believe that Defendants' prior willingness to pay the entire cost for Plaintiff's housing while he remained in a long-term care facility is dispositive on the issue of whether Defendants are *legally obligated* to pay the <u>entire</u> rental expense of Plaintiff's apartment as "other treatment" under G.S. 97-25.