McGEE, Chief Judge.
 

 *650
 
 Robert William Ashworth ("Defendant") appeals from judgment after a jury found him guilty of driving while impaired. We vacate the judgment and the trial court's denial of Defendant's motion to suppress, and remand for further proceedings.
 

 I.
 
 Background
 

 In the evening hours of 31 July 2013, North Carolina State Troopers Matthew Morrison ("Trooper Morrison") and Ray Fort ("Trooper Fort") were on duty in Orange County, North Carolina. They decided to operate a checking station, or checkpoint, at the intersection of Smith Level Road and Damascus Church Road in Chapel Hill, that was to begin at 8:00 p.m. and continue for approximately two hours. Prior to initiating the checking station, Trooper Morrison contacted his superior, Sergeant Michael Stuart ("Sergeant Stuart"), to request authorization. Sergeant Stuart gave his authorization, and later completed a "checking station authorization" form ("the form"). At the hearing, Sergeant Stuart testified he was unsure of when he filled out the form, but that it was likely the next day, 1 August 2013. The form noted that the primary purpose of the checking station was to ask for driver's licenses, and that the station would operate from 8:00 p.m. to 10:00 p.m.
 

 At approximately 9:45 p.m., a vehicle driven by Defendant approached on Damascus Church Road and stopped at the checking station. Trooper Morrison did not notice any violation of the law as Defendant approached. Trooper Morrison requested Defendant's driver's license, which Defendant produced. Detecting the odor of alcohol coming from the vehicle, Trooper Morrison asked Defendant whether he had been drinking. Defendant responded: "You got me. I had about five beers back to back, drank them real quick." Trooper Morrison conducted field sobriety tests on Defendant and, after determining that Defendant was impaired, arrested him for driving while impaired. A chemical analysis
 
 *651
 
 later revealed that Defendant's blood-alcohol concentration at the time of his arrest was 0.08.
 

 Prior to trial, Defendant filed a motion to suppress all evidence obtained as a result of the stop. Defendant argued that the checking station violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and Article I, Sections 19, 20 and 23 of the North Carolina Constitution. Defendant's motion was heard on 17 November 2014. The State presented the testimony of Trooper Morrison and Sergeant Stuart. Following witness testimony and arguments of counsel, the trial court took the matter under advisement. The trial court entered a written order on 19 November 2014 denying Defendant's motion to suppress. The case proceeded to trial. At trial, Defendant failed to timely object to the admission of evidence obtained as a result of the checkpoint stop. Defendant was
 
 *176
 
 convicted by a jury on 25 March 2015 of driving while impaired. Defendant appeals.
 

 II.
 
 Analysis
 

 In his sole argument, Defendant contends the trial court plainly erred in denying his motion to suppress. The scope of review of a suppression order is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke,
 

 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982) (citations omitted). Findings of fact that are not challenged on appeal are binding and deemed to be supported by competent evidence.
 
 State v. Biber,
 

 365 N.C. 162
 
 , 168,
 
 712 S.E.2d 874
 
 , 878 (2011). For findings that are challenged, this Court's review is "limited to determining whether competent evidence supports the trial court's findings of fact[.]"
 
 State v. Granger,
 

 235 N.C.App. 157
 
 , 161,
 
 761 S.E.2d 923
 
 , 926 (2014) (citation omitted). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding."
 
 State v. Chukwu,
 

 230 N.C.App. 553
 
 , 561,
 
 749 S.E.2d 910
 
 , 916 (2013) (citation omitted). If there is competent evidence to support the trial court's finding, then it is binding on appeal, "even if the evidence is conflicting."
 
 State v. Barden,
 

 356 N.C. 316
 
 , 332,
 
 572 S.E.2d 108
 
 , 120-21 (2002) (citation omitted).
 

 As Defendant concedes, he failed to lodge a timely objection at trial to the introduction of the evidence recovered as a result of Defendant being stopped at the checking station. Our Supreme Court has held that a pretrial motion to suppress is a type of motion
 
 in limine,
 

 State v. Golphin,
 

 352 N.C. 364
 
 , 405,
 
 533 S.E.2d 168
 
 , 198 (2000), and a "motion
 
 *652
 

 in limine
 
 is insufficient to preserve for appeal the question of the admissibility of evidence if the defendant fails to further object to that evidence at the time it is offered at trial."
 
 State v. Hayes,
 

 350 N.C. 79
 
 , 80,
 
 511 S.E.2d 302
 
 , 303 (1999) (per curiam) (citations omitted). Therefore, we consider whether the trial court plainly erred in denying Defendant's motion to suppress.
 
 [1]
 

 The plain error rule
 

 is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "
 
 fundamental
 
 error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the ... mistake had a probable impact on the jury's finding that the defendant was guilty."
 

 State v. Cummings,
 

 352 N.C. 600
 
 , 616,
 
 536 S.E.2d 36
 
 , 49 (2000) (alterations in original) (quoting
 
 State v. Odom,
 

 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983) );
 
 see also
 

 State v. Waring,
 

 364 N.C. 443
 
 , 468,
 
 701 S.E.2d 615
 
 , 631 (2010) (holding that when a defendant "fail[s] to preserve issues relating to [a] motion to suppress, we review for plain error"). To prevail, a defendant must show "not only that there was error, but that absent the error, the jury probably would have reached a different result."
 
 State v. Haselden,
 

 357 N.C. 1
 
 , 13,
 
 577 S.E.2d 594
 
 , 602 (2003) (internal quotation marks and citation omitted).
 

 A.
 
 Sufficiency of the Findings of Fact
 

 In its order denying Defendant's motion to suppress, the trial court entered the following findings of fact:
 

 1. Trooper Matthew Morrison has been working as a Trooper for the State of North Carolina, Department of Public Safety for the N.C. State Highway Patrol for
 
 *653
 
 two years. Prior to working for the N.C. State Highway Patrol, Trooper Morrison worked for the Chatham County Sheriffs' Office for the previous seven years.
 
 *177
 
 2. Sergeant Michael Stewart [sic] is employed and working as a Trooper for the State of North Carolina in the N.C. Department of Public Safety for the N.C. State Highway Patrol for over seven years. He has been a Sergeant for two years.
 

 3. On 31 July 2013 at or about 9:45 p.m., Trooper Morrison was working a checking station (hereafter referred to as "checkpoint") on Smith Level Road (1919) at the intersection with Damascus Church Road (1939) in Orange County with Trooper Fort. He was wearing his duty uniform, a safety vest, carrying a flash light and operating a marked patrol car with a light bar. The purpose of the checkpoint was to check driver's licenses and look for traffic violations. Trooper Morrison's vehicle was parked to the side of the road next to a private driveway with his lights operating.
 

 4. Two officers are required by Highway Patrol Policy for a checkpoint, so if one of them got tied up with a driver, they had to stop the checkpoint until they were both available to work the checkpoint.
 

 5. Prior to setting up the checkpoint, Trooper Morrison called Sergeant Stewart, one of his supervising officers, indicated that he and Trooper Fort wanted to set a checkpoint on 31 July 2013 to check for drivers/operator's license and other traffic violations of the traffic law at the intersection of Smith Level Road (1919) and Damascus Church Road (1939) from 8:00 p.m. until 10:00 p.m. by stopping every vehicle in every direction. Because Highway Patrol Policy for a checkpoint required two officers present at the checkpoint, if one of the two officer[s] got tied up with a driver, they had to stop the checkpoint until they were both available to work the checkpoint.
 

 6. Sergeant Stewart does not know when he filled out and signed the Checking Station Authorization Form (Form HP-14), but it was not that night, probably the next morning. He could have made a mistake in filling out the Checking Station Authorization Form. The Checking
 
 *654
 
 Station Authorization Form (HP-14) prepared and signed by Sergeant Stewart was marked and entered into evidence as State's Exhibit Number Two.
 

 7. The Checking Station Authorization Form later completed after the checkpoint had been conducted indicates the checking station was located on the western end of Damascus Church Road (1940) (near the intersection of Jones Ferry Road) and Smith Level Road (1919) checking only southbound traffic.
 

 8. The defendant was stopped on Damascus Church Road near Smith Level Road. Trooper Morrison saw a truck driven by the defendant pulled up to the checkpoint.
 

 Defendant only challenges findings of fact three and five. Thus, all other findings of fact are deemed to be supported by competent evidence and are binding on this Court.
 
 Biber,
 

 365 N.C. at 168
 
 ,
 
 712 S.E.2d at 878
 
 .
 

 Defendant asserts the portion of finding of fact three that states Trooper Morrison was "operating a marked patrol car with a light bar" is unsupported by competent evidence. We agree. At the hearing on Defendant's motion to suppress, the following colloquy occurred between the State and Trooper Morrison:
 

 [State:] Were you using any other lights other than what was on the patrol vehicles?
 

 [Trooper Morrison:] We had our flashlights.
 

 In addition, Trooper Morrison testified that both his vehicle and Trooper Fort's vehicle "had their lights on." However, Trooper Morrison himself never testified he was operating a patrol vehicle, and did not mention whether his vehicle, even if it was a patrol vehicle, was marked. Further, Trooper Morrison did not testify regarding whether his vehicle was equipped with a light bar. We hold that the evidence and testimony presented at the hearing on Defendant's motion to suppress does not support the challenged portion of finding of fact three, which is therefore not binding on appeal.
 
 See
 

 State v. Otto,
 

 366 N.C. 134
 
 , 136,
 
 726 S.E.2d 824
 
 , 827 (2012) (holding that when the "evidence does not support the trial court's finding," the finding "is not binding on this Court.").
 

 *178
 
 Defendant also challenges a portion of finding of fact five as unsupported by competence evidence. The challenged portion of finding of fact five states:
 

 *655
 
 Prior to setting up the checkpoint, Trooper Morrison called Sergeant Stewart, one of his supervising officers, [and] indicated that he and Trooper Fort wanted to set a checkpoint on 31 July 2013 to check for drivers/operator's license and other traffic violations of the traffic law at the intersection of Smith Level Road (1919) and Damascus Church Road (1939) from 8:00 p.m. until 10:00 p.m. by stopping every vehicle in every direction.
 

 Defendant contends that no competent evidence established that Trooper Morrison communicated to Sergeant Stuart: (1) a dedicated start and end time for the checking station; (2) which directions of traffic would be stopped; or (3) whether every vehicle would be stopped. We agree.
 

 At the hearing on Defendant's motion to suppress, Trooper Morrison testified about his conversation with Sergeant Stuart regarding authorization for the checking station:
 

 [State:] So tell us as best as you recall: What did you talk to Sergeant Stuart about or what did you say to him to get authorization.
 

 [Trooper Morrison:] I believe when we contacted him we just told him we wanted to do a checking station at Damascus-excuse me at Smith Level and Damascus, right there at that intersection. I think we told him we were going to start-I don't recall exactly if we told him what time we were going to start it or not, but we just told him we had two troopers there and wanted to do a checking station. And he just gave us his authorization. And he said, "Okay. Just let me know-" I think he said, "Let me know what time you start it, and let me know what time you end it."
 

 [State:] Did you discuss what directions of traffic you would be stopping at this intersection?
 

 [Trooper Morrison:] We were going to stop all three, coming off-going down Smith Level north and south, and coming off of Damascus.
 

 [State:] Do you recall whether or not you told Sergeant Stuart that specific information?
 

 *656
 
 [Trooper Morrison:] I don't. I don't think I told him that. I just told him-I am pretty sure we just told him we were going to do it right there at Damascus and Smith Level.
 

 Trooper Morrison admitted there was "no exact ending time" set for the checking station.
 

 Sergeant Stuart testified he did not recall whether he asked Trooper Morrison what time the checking station was to begin, but said as a general rule he asked for that information because he "need[ed] that information ... to fill out the authorization form."
 

 Sergeant Stuart further testified that as a general rule troopers checked cars in every direction, but he did not recall whether Trooper Morrison stated which directions would be checked at that particular checking station.
 

 After reviewing the record and transcript, we agree with Defendant that the challenged portion of finding of fact five is unsupported by competent evidence. No evidence or testimony presented at the hearing on Defendant's motion to suppress established that Trooper Morrison informed Sergeant Stuart of a dedicated start or end time for the checking station, which directions of traffic would be stopped, or whether every car would be stopped. The challenged portion of finding of fact five, being unsupported by competent evidence, is not binding on appeal.
 
 See
 

 Otto,
 

 366 N.C. at 136
 
 ,
 
 726 S.E.2d at 827
 
 .
 

 B.
 
 Constitutionality of the Checking Station
 

 In the present case, all findings of fact, except for the challenged portions of findings of fact three and five, are binding on appeal.
 
 Biber,
 

 365 N.C. at 168
 
 ,
 
 712 S.E.2d at 878
 
 . We next determine whether, as Defendant argues, the trial court's conclusion of law that the checking station was operated within federal constitutional limitations,
 
 [2]
 
 was plain error.
 

 *179
 
 In its order denying Defendant's motion to suppress, the trial court reached the following pertinent conclusions of law based on its findings of fact:
 

 3. Checkpoints for driver's licenses and other traffic violations advance an "important purpose" and the public has a "vital interest" in "ensuring compliance with these and other types of motor vehicle laws that promote public
 
 *657
 
 safety on the roads." Clearly, ensuring that drivers are properly licensed as required by law is of "vital interest" to the public and "the gravity of the public concerns are much greater than and were well-served by the minimal seizure" by temporarily stopping vehicles at this checkpoint.
 

 4. Although the officers in this case decided somewhat whimsically to set up this checkpoint, the officers did request approval and a Checking Station Authorization Form (HP-14) completed and signed by Sergeant Stewart, their Sergeant, as required for a checkpoint prior to conducting the checkpoint. The checkpoint had a "predetermined starting and ending time." In accordance with the Highway Patrol Policy, a minimum of two officers were assigned to the checkpoint, two vehicles were located at the checkpoint with their blue lights and emergency flashers operating, the officers were wearing uniforms and reflective safety vests, the officers were carrying flashlights, the checkpoint was visible for a distance in either direction, officers were to stop every vehicle that approached the checkpoint from every direction and officers were to ask for the same information-driver's license from every driver. However, no reason was stated for the selection of this particular location on this particular highway for this checkpoint, nor was any reason stated for the selection of this particular time span.
 

 5. Although, according to the Checking Station Authorization Form, the road number on which the checkpoint was to be conducted was "Road Number" 1940, which is west Damascus Church Road; the "Nearest Road Number" on the form was "1919", which is Smith Level Road. Since only 1939, which is east Damascus Church Road is near and intersects 1919; which is Smith Level Road, the reference to 1940 as the location for the checkpoint was clearly a typographical error.
 

 6. Although conducting a checkpoint at an intersection, rather than a designated stretch of a street or highway, is less supportive of an identified, particular problem on either road, and more supportive of a "fishing expedition"; the fact that east Damascus Church ends at its intersection with Smith Level Road, rather than continuing on through the intersection, makes the "designated purpose"
 

 *658
 
 of the checkpoint appear more logical to drivers traveling on Smith Level Road that all of the drivers in the vicinity are being treated equally. If drivers on Smith Level Road were being stopped and those on Damascus Church Road were not being stopped, it might appear that the former were being unfairly singled out for detention while the latter were receiving unwarranted favor.
 

 7. A applying [sic] the three-prong inquiry set out in
 
 Brown[ v. Texas,
 

 443 U.S. 47
 
 ,
 
 99 S.Ct. 2637
 
 ,
 
 61 L.Ed.2d 357
 
 (1979) ], the primary programmatic purpose of this checkpoint was lawful, the officers "appropriately tailored their checkpoint stops" to fit their primary programmatic purpose, and "the public interest in the checkpoint was NOT outweighed by the intrusion on the Defendant's protected liberty interest."
 

 8. For the foregoing reasons, the stop of the Defendant was constitutional and did not violate N.C.G.S. § 15A-16.3A.
 

 As noted, we review a motion to suppress to determine whether the trial court's "factual findings ... support the judge's ultimate conclusions of law."
 
 Cooke,
 

 306 N.C. at 134
 
 ,
 
 291 S.E.2d at 619
 
 . A trial court's conclusions of law on a motion to suppress are reviewed
 
 de novo
 
 and are subject to a full review, under which this Court considers the matter anew and freely substitutes its own judgment for that of the trial
 
 *180
 
 court.
 
 See
 

 Biber,
 

 365 N.C. at 168
 
 ,
 
 712 S.E.2d at 878
 
 . The conclusions of law "must be legally correct, reflecting a correct application of applicable legal principles to the facts found."
 
 State v. Fernandez,
 

 346 N.C. 1
 
 , 11,
 
 484 S.E.2d 350
 
 , 357 (1997) (citation omitted). In the present case, we hold that the binding findings of fact are insufficient to support the trial court's conclusions of law regarding the constitutionality of the checking station.
 

 The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. Const. amend. IV. "A traffic stop is a seizure even though the purpose of the stop is limited and the resulting detention quite brief."
 
 State v. Barnard,
 

 362 N.C. 244
 
 , 246,
 
 658 S.E.2d 643
 
 , 645 (2008) (quotation omitted). As the United States Supreme Court has held, "[t]he principal protection of Fourth Amendment rights at checkpoints lies in appropriate limitations on the scope of the stop."
 
 United States v. Martinez-Fuerte,
 

 428 U.S. 543
 
 , 566-567,
 
 96 S.Ct. 3074
 
 ,
 
 49 L.Ed.2d 1116
 
 (1976) (citation omitted). Checkpoint seizures are consistent with the Fourth Amendment if they are "carried out pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers."
 
 Brown v. Texas,
 

 443 U.S. 47
 
 , 51,
 
 99 S.Ct. 2637
 
 ,
 
 61 L.Ed.2d 357
 
 (1979) (citation omitted).
 

 *659
 
 When considering a constitutional challenge to a checkpoint, a reviewing court "must undertake a two-part inquiry to determine whether the checkpoint meets constitutional requirements."
 
 State v. Veazey,
 

 191 N.C.App. 181
 
 , 185,
 
 662 S.E.2d 683
 
 , 686 (2008). First, the court must determine the primary programmatic purpose of the checkpoint.
 

 Id.
 

 (citing
 
 City of Indianapolis v. Edmond,
 

 531 U.S. 32
 
 , 40-42,
 
 121 S.Ct. 447
 
 , 453-55,
 
 148 L.Ed.2d 333
 
 , 343 (2000) ). Second, if a legitimate primary programmatic purpose is found, " '[t]hat does not mean the stop is automatically, or even presumptively, constitutional. It simply means that [the court] must judge its reasonableness, hence, its constitutionality, on the basis of the individual circumstances.' "
 

 Id.
 

 (quoting
 
 Illinois v. Lidster,
 

 540 U.S. 419
 
 , 426,
 
 124 S.Ct. 885
 
 , 890,
 
 157 L.Ed.2d 843
 
 , 852 (2004) ).
 

 In the present case, the trial court concluded that the checking station had a proper programmatic purpose of checking for driver's licenses and other traffic violations. Defendant does not challenge the primary programmatic purpose of the checking station; therefore, we consider whether the trial court plainly erred in concluding that the checkpoint was "reasonable," given the findings of fact in this case.
 

 To determine whether a checkpoint was "reasonable" under the Fourth Amendment, a court must weigh the public's interest in the checkpoint against the individual's Fourth Amendment privacy interest.
 
 See, e.g.,
 

 Martinez-Fuerte,
 

 428 U.S. at 555
 
 ,
 
 96 S.Ct. at 3081-82
 
 ,
 
 49 L.Ed.2d at 1126
 
 . In
 
 Brown v. Texas,
 
 the United States Supreme Court developed a three-part test when conducting this balancing inquiry, and held a reviewing court must consider: "[ (1) ] the gravity of the public concerns served by the seizure, [ (2) ] the degree to which the seizure advances the public interest, and [ (3) ] the severity of the interference with individual liberty."
 
 443 U.S. at 51
 
 ,
 
 99 S.Ct. at 2640
 
 ,
 
 61 L.Ed.2d at 362
 
 (citation omitted). If, on balance, these factors weigh in favor of the public interest, the checkpoint is reasonable and therefore constitutional.
 
 Veazey,
 

 191 N.C.App. at 186
 
 ,
 
 662 S.E.2d at
 
 687 (citing
 
 Lidster,
 

 540 U.S. at 427-28
 
 ,
 
 124 S.Ct. at 890-92
 
 ,
 
 157 L.Ed.2d at
 
 852-53 ).
 

 Under
 
 Brown's
 
 first prong, the trial court was to consider "the gravity of the public concerns served by the seizure."
 
 Brown,
 

 443 U.S. at 51
 
 ,
 
 99 S.Ct. at 2640
 
 ,
 
 61 L.Ed.2d at 362
 
 . Both this Court and the United States Supreme Court have held that "license and registration checkpoints advance an important purpose[.]"
 
 Veazey,
 

 191 N.C.App. at 191
 
 ,
 
 662 S.E.2d at 690
 
 (citation omitted);
 
 see also
 

 Delaware v. Prouse,
 

 440 U.S. 648
 
 , 658,
 
 99 S.Ct. 1391
 
 , 1398,
 
 59 L.Ed.2d 660
 
 , 670-71 (1979) ("States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are fit for safe operation, and hence that licensing, registration, and vehicle inspection requirements are being observed.").
 

 *660
 
 In the present case, the trial
 
 *181
 
 court found as fact that the purpose of the checking station was to "check driver's licenses and look for traffic violations," and concluded as a matter of law that " ensuring that drivers are properly licensed ... [was] of 'vital interest' " and that interest outweighed the "minimal seizure" of this checkpoint stop. This finding of fact and conclusion of law reflect a sufficient consideration of
 
 Brown's
 
 first prong.
 
 See
 

 State v. McDonald,
 
 --- N.C.App. ----, ----,
 
 768 S.E.2d 913
 
 , 921 (2015) ("While ... checking for driver's license and vehicle registration violations is a permissible purpose for the operation of a checkpoint, the identification of such a purpose does not exempt the trial court from determining the gravity of the public concern actually furthered under the circumstances surrounding the specific checkpoint being challenged."). Accordingly, the trial court did not err, nor plainly err, in concluding that the first prong of
 
 Brown
 
 was satisfied.
 

 Under
 
 Brown's
 
 second prong, the trial court was required to consider "the degree to which the seizure advance[d] the public interest."
 
 Brown,
 

 443 U.S. at 51
 
 , 99 S.Ct. at 2640,
 
 61 L.Ed.2d at 362
 
 . This Court has previously identified a number of non-exclusive factors that courts should consider when determining whether a checkpoint is appropriately tailored, including:
 

 whether police spontaneously decided to set up the checkpoint on a whim; whether police offered any reason why a particular road or stretch of road was chosen for the checkpoint; whether the checkpoint had a predetermined starting or ending time; and whether police offered any reason why that particular time span was selected.
 

 Veazey,
 

 191 N.C.App. at 191
 
 ,
 
 662 S.E.2d at 690
 
 (citation omitted). In its order denying Defendant's motion to suppress, the trial court made no findings of fact regarding whether the checkpoint was spontaneously set up on a whim,
 
 [3]
 
 whether the police offered a reason why the intersection of Damascus Church and Smith Level Road was chosen, why the time span for the checking station was chosen, or any other reason why the checking station advanced the public interest. Although the trial court did find as fact that Trooper Morrison informed Sergeant Stuart that the checking station had a predetermined start and end time-8:00 p.m. and 10:00 p.m., respectively-as we have held, that finding of fact is unsupported by competent evidence.
 
 See
 

 supra,
 
 at 177-78. We hold that the trial court's findings of fact do not support its conclusion of law
 
 *661
 
 that the seizure was appropriately tailored and advanced the public interest and, given the lack of findings to support such a conclusion, the trial court plainly erred in holding that the second Brown prong was satisfied.
 
 Brown,
 

 443 U.S. at 51
 
 , 99 S.Ct. at 2640-41,
 
 61 L.Ed.2d at 362
 
 .
 

 Finally,
 
 Brown's
 
 third prong required the trial court to consider "the severity of the [checking station's] interference with individual liberty."
 

 Id.
 

 In general, "[t]he circumstances surrounding a checkpoint stop and search are far less intrusive than those attending a roving-patrol stop."
 
 Martinez-Fuerte,
 

 428 U.S. at 558
 
 ,
 
 96 S.Ct. at 3083
 
 ,
 
 49 L.Ed.2d at 1128
 
 (quotation omitted). However, "courts have consistently required restrictions on the discretion of the officers conducting the checkpoint to ensure that the intrusion on individual liberty is no greater than is necessary to achieve the checkpoint's objectives."
 
 Veazey,
 

 191 N.C.App. at 192
 
 ,
 
 662 S.E.2d at 690-91
 
 . As this Court noted in
 
 Veazey,
 

 [c]ourts have previously identified a number of non-exclusive factors relevant to officer discretion and individual privacy, including: the checkpoint's potential interference with legitimate traffic; whether police took steps to put drivers on notice of an approaching checkpoint; whether the location of the checkpoint was selected by a supervising official, rather than by officers in the field; whether police stopped every vehicle that passed through the checkpoint, or stopped vehicles pursuant to a set pattern; whether drivers could see visible signs of the officers' authority; whether police operated the checkpoint pursuant to any oral or written guidelines; whether the officers were subject to any
 
 *182
 
 form of supervision; and whether the officers received permission from their supervising officer to conduct the checkpoint. Our Court has held that these and other factors are not "lynchpins," but instead are circumstances to be considered as part of the totality of the circumstances in examining the reasonableness of a checkpoint.
 

 Id.
 
 at 193,
 
 662 S.E.2d at 691
 
 (internal citations and quotation marks omitted).
 

 In the present case, the trial court did make several findings of fact regarding
 
 Brown's
 
 third prong, including: (1) Sergeant Stuart, a supervising officer, authorized the checking station; (2) the lights on Trooper Morrison's vehicle were operating; and (3) the troopers were wearing duty uniforms and safety vests, and were carrying flashlights. While
 
 *662
 
 these findings demonstrate that the trial court did consider some of the relevant factors under
 
 Brown's
 
 third prong, the lack of any findings to support the trial court's conclusion that the checking station "advanced the public interest" under
 
 Brown's
 
 second prong provided no basis upon which the court could "weigh the public's interest in the checkpoint against the individual's Fourth Amendment privacy interest."
 
 Veazey,
 

 191 N.C.App. at 186
 
 ,
 
 662 S.E.2d at 687
 
 . As our Court held in
 
 McDonald,
 

 [w]e do not mean to imply that the factors discussed above are exclusive or that trial courts must mechanically engage in a rote application of them in every order ruling upon a motion to suppress in the checkpoint context. Rather, our holding today simply reiterates our rulings in
 
 Veazey
 
 and its progeny that in order to pass constitutional muster, such orders must contain findings and conclusions sufficient to demonstrate that the trial court has meaningfully applied the three prongs of the test articulated in
 
 Brown.
 

 McDonald,
 
 --- N.C.App. at ----,
 
 768 S.E.2d at 921
 
 .
 

 III.
 
 Conclusion
 

 The findings of fact in the trial court's order denying Defendant's motion to suppress do not support the trial court's conclusions of law that the checking station was conducted consistent with the Fourth Amendment. The trial court's findings of fact did not permit the judge to meaningfully weigh the considerations required under the second and third prongs of
 
 Brown.
 
 We hold the error amounted to plain error, as it likely affected the jury's verdict-the evidence obtained at the checking station was the only evidence presented by the State at trial. The trial court's judgment and the order denying Defendant's motion to suppress are vacated, and this case is remanded for further findings of fact and conclusions of law regarding the reasonableness of the checkpoint stop.
 

 JUDGMENT VACATED; VACATED AND REMANDED.
 

 Judges STEPHENS and DAVIS concur.
 

 [1]
 

 To be entitled to plain error review, a defendant must "specifically and distinctly contend that the alleged error constituted plain error."
 
 State v. Lawrence,
 

 365 N.C. 506
 
 , 516,
 
 723 S.E.2d 326
 
 , 333 (2012). Here, Defendant has done so; therefore, we proceed to a plain error analysis.
 

 [2]
 

 While Defendant's motion to suppress argued the checking station violated his state and federal constitutional rights, Defendant's brief to this Court only argues the checking station was unconstitutional on Fourth Amendment grounds. Any argument on state constitutional grounds is deemed abandoned. N.C.R.App. P. Rule 28(b)(6).
 

 [3]
 

 The trial court did conclude as a matter of law, however, that "the officers in this case decided somewhat whimsically to set up this checkpoint[.]"