McGEE, Chief Judge.
Respondent-Father appeals from order terminating his parental rights as to his minor daughter C-R.D.G. ("the child"). We reverse and remand.
I. Factual and Procedural History
Mecklenburg County Department of Social Services, Youth and Family Services Division ("YFS") filed a petition on 6 January 2015 alleging that the child was a neglected and dependent juvenile. YFS stated it received a report on 29 December 2014 that the child's mother ("the mother") had left her in the care of a maternal aunt ("the maternal aunt") because she was entering drug rehabilitation. Sometime later, after not hearing from the mother, the maternal aunt attempted to locate her at her last known address, but was unsuccessful. While the maternal aunt was willing to provide care for the child, she needed daycare assistance because she worked full-time. Additionally, the child had been sick and the maternal aunt had been unable to obtain medical care for her because the mother did not provide the maternal aunt with the child's Medicaid card. YFS stated it had also attempted to locate the mother, but was not successful. YFS claimed the mother was not in rehabilitation and had been "seen daily by people in the neighborhood." Accordingly, YFS obtained non-secure custody of the child and placed her with the maternal aunt.
At the time YFS filed the petition alleging neglect and dependency, the identity of the child's father was unknown. YFS eventually located the mother and she identified Respondent-Father as the child's father. Respondent-Father was later located in prison in Virginia.
Respondent-Father had been incarcerated on several occasions. When he was sixteen years old, Respondent-Father was convicted of two counts of second-degree murder and sentenced to eighty years of incarceration. Respondent-Father's convictions were reversed two years later in 2004 by the West Virginia Supreme Court. Respondent-Father was charged with first-degree capital murder and robbery in 2006. A mistrial was declared and Respondent-Father pleaded guilty to possession with intent to distribute cocaine and robbery prior to retrial. After five years of incarceration, Respondent-Father was released on probation in 2011. While Respondent-Father was on probation, the child was conceived. Prior to the child's birth, Respondent-Father was re-incarcerated in 2013 for violating his probation by crossing state lines and being charged with possession of a firearm by a felon. Respondent-Father's estimated release date is in July of 2020.
The trial court held adjudicatory and dispositional hearings on 12 May 2015. The mother stipulated to the facts supporting the adjudication of the child as neglected and dependent. The trial court placed the child in the legal and physical custody of YFS and established a permanent plan of reunification with concurrent plans of guardianship and adoption. In a review order entered 21 September 2015, the trial court found that Respondent-Father's paternity of the child had been established through DNA testing.
The maternal aunt had a disagreement with YFS on 4 March 2016 and refused to continue providing care for the child, and she was placed in foster care. The child was returned to the mother's home on 8 July 2016 for a trial placement. However, by September 2016, the mother began regressing. She did not attend therapy, failed to appear for drug court, and admitted to using cocaine. YFS then removed the child from the mother's care and returned her to foster care.
YFS contacted Respondent-Father and he offered several placement options for the child, including his wife, who resided in Maryland. Following a subsequent permanency planning review hearing on 28 September 2016, the trial court ceased reunification efforts, and changed the primary permanent plan for the child to adoption and the secondary plan to guardianship. The trial court permitted Respondent-Father to continue his contact with the child and ordered YFS to follow up with the placement options Respondent-Father provided. The trial court further ordered YFS to file a petition to terminate Respondent-Father's and the mother's parental rights within sixty days. YFS filed a petition to terminate Respondent-Father's and the mother's parental rights on 2 February 2017, pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (neglect), (2) (willful failure to make reasonable progress), (3) (failure to pay support), and (6) (dependency) (2017).
The trial court held a permanency planning review hearing on 10 May 2017. The social worker assigned to the child's case testified that Respondent-Father's wife's home study was fully approved and the trial court admitted the YFS court summary, including a summary of the home study, into evidence. The home study described Respondent-Father's wife's home, which she had lived in for seventeen years, her relationship with her two children, and her finances. Respondent-Father's wife additionally testified that she was willing and able to care for the child. Consequently, Respondent-Father argued that a hearing on the petition to terminate his parental rights was unnecessary and that the child should be placed with his wife. The trial court entered an order on 31 May 2017 maintaining the permanent plan of adoption with a secondary concurrent plan of guardianship. The court further ordered that custody of the child remain with YFS and that she remain in foster care.
Hearings on the petition to terminate Respondent-Father's and the mother's parental rights were held on 31 May 2017, 1 June 2017, and 11 July 2017. Prior to the hearings, Respondent-Father moved to dismiss the petition to terminate his parental rights, arguing that the petition was unnecessary and the child should be placed with his wife. The trial court denied Respondent-Father's motion.
The trial court entered an order on 2 November 2017, determining that grounds existed to terminate Respondent-Father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(6). The trial court also found that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (6) to terminate the mother's parental rights. The trial court concluded it was in the child's best interest that Respondent-Father's and the mother's parental rights be terminated. The trial court terminated the parental rights of both Respondent-Father and the mother. YFS filed a Rule 60 motion on 8 November 2017 to reconsider whether grounds existed pursuant to N.C.G.S. § 7B-1111(a)(1) and (3) to terminate Respondent-Father's parental rights. That motion was denied. Respondent-Father appeals from the trial court's order terminating his parental rights.[1]
II. Analysis
Respondent-Father raises three arguments on appeal: (1) the trial court erred in terminating his parental rights as to the child because he provided an appropriate alternative child care arrangement, (2) the trial court erred by concluding it was in the child's best interest to terminate Respondent-Father's parental rights, and (3) the trial court erred by failing to place the child with his wife at the 10 May 2017 permanency planning hearing and by failing to make required findings. YFS argues that alternative bases in law exist to support the trial court's decision to terminate Respondent-Father's parental rights under N.C.G.S. § 7B-1111(a)(1), (2), and (3).
In section A of this opinion, we address Respondent-Father's first argument concerning N.C.G.S. § 7B-1111(a)(6). In section B, we address YFS's argument concerning N.C.G.S. § 7B-1111(a)(1), (2), and (3). Finally, in section C, we address Respondent-Father's third argument concerning the trial court's 31 May 2017 permanency planning order. We agree with Respondent-Father that the trial court erred in determining that grounds existed to terminate his parental rights and, therefore, we do not address his second argument.
A. Termination of Parental Rights Pursuant to N.C. Gen. Stat. § 7B-1111(a)(6)
Respondent-Father first argues the trial court erred by concluding grounds existed to terminate his parental rights. We agree.
N.C. Gen. Stat. § 7B-1111 (2017) sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support termination. In re Taylor , 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D. , 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005) (citing In re Huff , 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001) ).
In the present case, the trial court concluded grounds existed to terminate Respondent-Father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(6). This subsection provides that the trial court may terminate parental rights where:
[T]he parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of [N.C.]G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.
N.C.G.S. § 7B-1111(a)(6). "In determining whether a juvenile is dependent, 'the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements.' " In re B.M. , 183 N.C. App. 84, 90, 643 S.E.2d 644, 648 (2007) (quoting In re P.M. , 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005) ).
In support of its conclusion that grounds existed to terminate Respondent-Father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(6), the trial court found as fact:
41. YFS contacted [Respondent-Father] when [the child] was removed from [the mother's] care. [Respondent-Father] requested that his mother, father, wife and sister be considered for placement.
42. YFS started to look more at [Respondent-Father's] family members after [the mother] relapsed. [Respondent-Father] could not provide placement for [the child]. ... [Respondent-Father's wife] cooperated with the ICPC and her home study was approved.
43. [Respondent-Father's wife] has known [Respondent-Father] for about 15 years. There were lots of discrepancies regarding [Respondent-Father's] and [his wife's] history. They had been hooking up for a number of years until their relationship became serious/romantic about two years ago. They married while [Respondent-Father] was incarcerated in March, 2016.
44. [Respondent-Father's wife] was offered unlimited visitation with [the child] by YFS in March 2016. She did not engage much in the way of visits or telephone calls until December, 2016. She visited on 02/01/2017; 05/09/2017; 05/10/2017 and 05/20/2017.
45. [Respondent-Father's wife] has taken [the child] to Chuck E. Cheese when she has visited.
....
49. [Respondent-Father's wife] has lived in Maryland for 25 years. She has two children ages 29 and 17. [Her] adult daughter ... is married and has four children. [She] has a close relationship with her daughter. [Her daughter] operates a daycare and would allow [the child] to be enrolled in her daycare if placed with [Respondent-Father's wife].
50. [Respondent-Father's wife] has spoken monthly to the child since December, 2016. She has sent two packages to [the child, one] near a birthday and one at Easter and [she] took [the child] shopping on December 4, 2016 and bought her a teapot set and a purse.
51. [Respondent-Father's wife] has visited once separately and five times in coordination with court hearings.
52. When [Respondent-Father's wife] came to town, [the foster father] let her borrow and installed a car seat at each visit.
....
58. While [Respondent-Father] was working in Ohio, he picked up weapons charges. Those charges were dismissed but resulted in his re-incarceration and probation violation. The probation violation was a result of him not properly being in the State of Virginia and picking up new charges. He has a release date of July 2020.
....
66. [The child] does not have a bond with [Respondent-Father's wife.]
"Findings of fact that are not challenged on appeal are binding and deemed to be supported by competent evidence." State v. Ashworth , --- N.C. App. ----, ----, 790 S.E.2d 173, 176 (2016). We review only those findings necessary to support the trial court's conclusion that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(6) to terminate Respondent-Father's parental rights. See In re T.M. , 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) (erroneous findings that are unnecessary to support adjudication of neglect do not constitute reversible error).
Respondent-Father argues that there are minor discrepancies in findings of fact 44 and 50. We agree. In finding of fact 50, the trial court found that Respondent-Father's wife took the child shopping on 4 December 2016. However, finding of fact 44 omits that date from the list of dates when Respondent-Father's wife visited the child. The record includes documentation demonstrating that Respondent-Father's wife visited the child on that date. Consequently, the omission of that date from finding of fact 44 was erroneous.
Respondent-Father further argues that finding of fact 66-that his wife had no bond with the child-is both unsupported by the evidence and improper as an adjudicatory finding. We disagree. The evidence demonstrates that Respondent-Father's wife visited the child on only a few occasions, and that the child did not see her as a mother or stepmother, but rather as someone with whom she enjoyed spending time. From this evidence, the trial court could reasonably find that there was no bond between Respondent-Father's wife and the child. See In re Whisnant , 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (it is the trial court's duty to "weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom.").
The greater question is whether the trial court conflated the separate stages of adjudication and disposition when making finding of fact 66.
There is a two-step process in a termination of parental rights proceeding. In the adjudicatory stage, the trial court must establish that at least one ground for the termination of parental rights listed in N.C. Gen. Stat. § [7B-1111] exists. ... Once one or more of the grounds for termination are established, the trial court must proceed to the dispositional stage where the best interests of the child are considered.
In re Blackburn , 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001) (internal citations omitted). One of the factors relevant to determining whether termination is in the best interest of the juvenile at the dispositional stage is "[t]he quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement." N.C. Gen. Stat. § 7B-1110(a)(5) (2017). The trial court's finding concerning the bond between Respondent-Father's wife and the child was a relevant determination of best interests at the dispositional stage, but is not relevant to the adjudication of grounds upon which to terminate Respondent-Father's parental rights.
Even assuming arguendo that finding of fact number 66 was proper in regard to adjudication, we conclude it was not relevant to determining whether grounds existed to terminate Respondent-Father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(6). Respondent-Father concedes the trial court's finding that he would be incarcerated through 2020 supports its determination that he was unable to provide proper care or supervision for the child. See In re L.R.S. , 237 N.C. App. 16, 21, 764 S.E.2d 908, 911 (2014) (concluding that the mother's thirty-eight months of incarceration was sufficient to constitute a condition that rendered her unable or unavailable to parent her daughter). Respondent-Father argues, however, that the trial court's findings do not support its conclusion that he lacked an alternative child care arrangement. We agree.
An appropriate alternative caregiver is one who is willing and able to care for the dependent juvenile. See D.J.D. , 171 N.C. App. at 239, 615 S.E.2d at 32 (holding that the juveniles were dependent where there was no evidence that the father's proposed placement for his children was "willing or able" to care for the children). The bond between the child and Respondent-Father's wife is not relevant to a determination as to whether she was willing and able to care for the child. Furthermore, the trial court's findings demonstrate that Respondent-Father's wife visited the child and spoke with her monthly, that she had a close relationship with her adult daughter, that she cooperated with the ICPC, and had an approved home study. Based on this record, we hold the trial court's findings of fact do not support its conclusion that Respondent-Father lacked an appropriate alternative child care arrangement. Accordingly, we reverse the trial court's determination that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(6) to terminate Respondent-Father's parental rights.
B. Termination of Parental Rights Pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), and (3)
In its brief, YFS seeks to argue by cross-assignments of error that the trial court erred by failing to conclude grounds existed to terminate Respondent-Father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (3).
1. Appellate Jurisdiction
"[C]ross-assignments of error no longer exist under our Rules of Appellate Procedure; they disappeared along with assignments of error when the Rules were revised in 2009." Bd. of Dirs. of Queens Towers Homeowners' Assoc. v. Rosenstadt , 214 N.C. App. 162, 168, 714 S.E.2d 765, 769 (2011). Instead, YFS seeks appellate review of an alternative basis in law under Rule 10(c) of the Rules of Appellate Procedure, which provides:
Without taking an appeal, an appellee may list proposed issues on appeal in the record on appeal based on any action or omission of the trial court that was properly preserved for appellate review and that deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken. An appellee's list of proposed issues on appeal shall not preclude an appellee from presenting arguments on other issues in its brief.
N.C. R. App. P. 10(c).
Respondent-Father has filed a motion to dismiss YFS's purported cross-appeal or cross-assignment of error on the grounds that YFS neither gave notice of appeal from the trial court's order, nor listed any proposed issues in the record on appeal. In response, YFS has filed a petition for writ of certiorari in the event this Court determines that listing proposed issues in the record on appeal is a prerequisite to raising its issues on appeal.
Rule 10(c) is a mechanism to provide " 'protection for appellees who have been deprived in the trial court of an alternative basis in law on which their favorable judgment could be supported, and who face the possibility that on appeal prejudicial error will be found in the ground on which their judgment was actually based.' " Holmes v. Sheppard , --- N.C. App. ----, ----, 805 S.E.2d 371, 377 (2017), disc. review denied , 370 N.C. 695, 811 S.E.2d 589 (2018) (quoting Carawan v. Tate , 304 N.C. 696, 701, 286 S.E.2d 99, 102 (1982) ). If the trial court had concluded grounds existed pursuant to N.C.G.S. § 7B-1111(a)(1), (2), or (3) to terminate Respondent-Father's parental rights, then that would have provided an alternative basis in law to support the trial court's order; thus, review is proper under Rule 10(c).
In regard to Respondent-Father's argument that YFS's failure to list proposed issues in the record on appeal deprives this Court of jurisdiction, we are not persuaded. This Court has stated Rule 10(c) does not require a party to list proposed issues in the record on appeal in order to preserve those issues for review, and a party "properly preserve[s] these issues as alternative bases in law for supporting the trial court's order by presenting them in their appellee brief." Williams v. Habul , 219 N.C. App. 281, 295 n. 10, 724 S.E.2d 104, 113 n. 10 (2012) (citing N.C. R. App. P. 10(c) ("An appellee's list of proposed issues on appeal shall not preclude an appellee from presenting arguments on other issues in its brief.") ). Accordingly, Respondent-Father's motion to dismiss YFS's cross-appeal is denied, and YFS's petition for writ of certiorari, based on its failure to list its proposed issues in the record on appeal, is denied as being unnecessary.
We note, however, that YFS preserved its arguments only as to N.C.G.S. § 7B-1111(a)(1) and (3). See State v. Ray , 364 N.C. 272, 280 n. 2, 697 S.E.2d 319, 323-24 n. 2 (2010) (in order to seek appellate review pursuant to Rule 10(c), "an appellee still must have 'properly preserve[d]' these issues 'for appellate review' by raising them below."). Although it appears YFS attempted to question the trial court after it announced its findings on the grounds for termination, the exact nature of YFS's objection is unclear because the transcript contains notations that YFS's attorney's remarks were "unintelligible."
At no point did YFS attempt to provide this Court a narrative of the hearing in order to clarify the nature of its exception. See In re L.B. , 184 N.C. App. 442, 454, 646 S.E.2d 411, 417-18 (2007) (noting that it was appellant's duty to make sure the record was complete, that respondent failed to provide the Court with a narrative of the proceedings, and stating that as a result respondent had failed to do all that could be done to reconstruct the transcript (citing Coppley v. Coppley , 128 N.C. App. 658, 663, 496 S.E.2d 611, 616, disc. review denied , 348 N.C. 281, 502 S.E.2d 846 (1998) ) ). YFS's exception at the hearing was insufficient to preserve its arguments for appeal.
However, following entry of the trial court's order, YFS filed a Rule 60 motion in which it sought reconsideration of the trial court's failure to conclude grounds existed pursuant to N.C.G.S. § 7B-1111(a)(1) and (3). YFS did not cite N.C.G.S. § 7B-1111(a)(2) as a basis for relief. Thus, we conclude YFS has preserved its arguments concerning the existence of grounds to terminate Respondent-Father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) and (3), but we decline to consider its argument that grounds existed to terminate Respondent-Father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2).
2. Analysis
Upon review of whether grounds existed to terminate Respondent-Father's parental rights, the trial court's order does not comply with N.C. Gen. Stat. § 7B-1109(e) (2017). N.C.G.S. § 7B-1109(e) provides that the trial court "shall adjudicate the existence or nonexistence of any of the circumstances set forth in [N.C.]G.S. 7B-1111 which authorize the termination of parental rights of the respondent." N.C.G.S. § 7B-1109(e) (emphasis added). "Thus, the trial court is required to address every ground brought forth in a petition or motion to terminate a parent's rights to his or her child, and make a determination for every ground alleged, whether the petitioning party has proved that ground, or failed to prove that ground." In re O.D.S. , --- N.C. App. ----, ----, 786 S.E.2d 410, 412 (emphasis added), disc. review denied sub nom. Matter of O.D.S. , 369 N.C. 43, 792 S.E.2d 504 (2016).
In the trial court's order, there are no conclusions of law adjudicating the existence or non-existence of grounds to terminate Respondent-Father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) and (3). However, upon review of the record, this appears to be a clerical oversight. At the termination hearing, the trial court orally rendered its decision that YFS had proved grounds existed to terminate Respondent-Father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(6) only. Furthermore, the trial court specifically stated it would not find grounds to terminate Respondent-Father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) and (3). There is no indication in the record that the trial court changed its determination prior to entry of judgment.
The trial court's order contains findings of fact that support its oral pronouncement that grounds did not exist pursuant to N.C.G.S. § 7B-1111(a)(1) and (3) to terminate Respondent-Father's parental rights. N.C.G.S. § 7B-1111(a)(1) provides for termination of parental rights where a parent has neglected the juvenile. "Neglected juvenile" is defined as:
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; ... or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2017). Generally, "[i]n deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child 'at the time of the termination proceeding.' " In re L.O.K. , 174 N.C. App. 426, 435, 621 S.E.2d 236, 242 (2005) (quoting In re Ballard , 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) ). When, however, as here, "a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, 'requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible.' " Id. (citing In re Shermer , 156 N.C. App. 281, 286, 576 S.E.2d 403, 407 (2003) ). "In those circumstances, a trial court may find that grounds for termination exist upon a showing of a 'history of neglect by the parent and the probability of a repetition of neglect.' " Id.
Here, the trial court found as fact that the child was adjudicated neglected and dependent on 12 May 2015, based largely on findings that the mother was unable to provide care for the child. Regarding Respondent-Father, the trial court additionally found as fact:
17. [Respondent-Father] was located in the Virginia Department of Corrections. The assigned social worker did a very good job of locating [Respondent-Father] and maintaining contact with him. She sent him a letter on March 6, 2015.
18. [Respondent-Father] moved from Greenrock Correctional in October 2015. He learned of the paternity results on August 6, 2015.
....
22. A Review Hearing was held on August 12, 2015. YFS proposed a case plan for [Respondent-Father]. [Respondent-Father was] ordered to comply with the case plan and services.
23. [Respondent-Father] was working the case plan at that time to [the] best of his ability. He was maintaining contact with the Social Worker and was taking classes while in custody.
24. [Respondent-Father's] case plan contained the following requirements:
• [Respondent-Father] will complete an assessment and follow all recommendations.
• [Respondent-Father] will attend court ordered visitation with [the child].
• [Respondent-Father] will maintain contact with the social worker to relay information related to any changes in his contact information, including phone number and address. [Respondent-Father] will also update the social worker of his progress with [the] Family Services Agreement during this weekly contact.
....
26. A Review Hearing was held on November 10, 2015. The [trial court] adopted the YFS recommendations, which included contact between [Respondent-Father] and [the child] would occur by way of telephone calls and letters.
....
30. .... [Respondent-Father] had one telephone call with [the child] on January 25, 2016.
31. On March 18, 2016, the social worker spoke with [Respondent-Father] and reminded him to write letters to [the child] weekly and discussed the benefits of doing so.
32. A permanency planning review hearing was held on May 11, 2016. The court found that ... [Respondent-Father] had sent packages containing gifts, books, clothing and candy.
....
62. YFS facilitated [Respondent-Father's] phone calls with [the child] monthly.
....
64. [Respondent-Father] wrote two letters to [the child].
YFS does not challenge the trial court's findings and we are bound by them. Ashworth , --- N.C. App. at ----, 790 S.E.2d at 176.
YFS cites Respondent-Father's "history of lawlessness," his persistent incarceration, and his failure to maintain adequate contact with the child as demonstrating a probability of repetition of neglect. However, "[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights decision." In re Yocum , 158 N.C. App. 198, 207-08, 580 S.E.2d 399, 405, aff'd per curiam , 357 N.C. 568, 597 S.E.2d 674 (2003). This Court has additionally stated that "[i]ncarceration alone ... does not negate a father's neglect of his child. Although his options for showing affection are greatly limited, the respondent will not be excused from showing interest in the child's welfare by whatever means available." Whittington v. Hendren , 156 N.C. App. 364, 368, 576 S.E.2d 372, 376 (2003).
In the present case, the trial court's findings demonstrate Respondent-Father had contact with the child and provided her with gifts and other items, and that Respondent-Father was working on his case plan to the best of his ability. Although YFS cites evidence that it contends would support additional findings of fact demonstrating neglect by Respondent-Father, and the likelihood of repetition of neglect, our review of an order terminating parental rights is strictly "limited to a determination of whether the findings of fact are supported by clear, cogent and convincing evidence and whether the findings of fact support the adjudicatory conclusions of law." In re D.T.N.A. , --- N.C. App. ----, ----, 801 S.E.2d 642, 644 (2016).
It is also apparent that the trial court was not persuaded by YFS's evidence. See In re J.M.W. , 179 N.C. App. 788, 792, 635 S.E.2d 916, 919 (2006) (because the trial court sits as trier of fact, its "findings of fact are conclusive on appeal if they are supported by 'ample, competent evidence,' even if there is evidence to the contrary.") (quoting In re Williamson , 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988) ). Furthermore, even assuming arguendo that the trial court had made such findings as proffered by YFS, the trial court's other findings of fact concerning Respondent-Father's efforts at complying with his case plan and maintaining contact with the child nevertheless support the trial court's conclusion that grounds did not exist pursuant to N.C.G.S. § 7B-1111(a)(1) to terminate Respondent-Father's parental rights. Consequently, we conclude the trial court did not err by adjudicating the nonexistence of this ground.
Under N.C.G.S. § 7B-1111(a)(3), the trial court may terminate parental rights upon a finding that
[t]he juvenile has been placed in the custody of a county department of social services ... and the parent, for a continuous period of six months next preceding the filing of the petition or motion, has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.
N.C.G.S. § 7B-1111(a)(3). "The trial court must examine the child's reasonable needs and the parent's ability to pay." In re J.E.M., Jr. , 221 N.C. App. 361, 364, 727 S.E.2d 398, 401 (2012). "[N]onpayment constitutes a failure to pay a reasonable portion 'if and only if respondent [is] able to pay some amount greater than zero.' " In re Clark , 151 N.C. App. 286, 289, 565 S.E.2d 245, 247 (quoting In re Bradley , 57 N.C. App. 475, 479, 291 S.E.2d 800, 802 (1982) ), disc. review denied , 356 N.C. 302, 570 S.E.2d 501 (2002).
In this case, the trial court made no such findings, and YFS cites no evidence presented, concerning the child's reasonable needs. Furthermore, the trial court specifically found that Respondent-Father "could not contribute some amount greater than zero towards the cost of [the child's] care in the 6 months prior to filing of the petition." Consequently, we conclude the trial court did not err by adjudicating the non-existence of this ground.
The trial court erred by concluding grounds existed to terminate Respondent-Father's parental rights. Therefore, it is unnecessary for us to address Respondent-Father's argument that the trial court abused its discretion by concluding it was in the child's best interest to terminate his parental rights. See N.C. Gen. Stat. § 7B-1110 (2017). We reverse the trial court's order terminating Respondent-Father's parental rights.
C. Permanency Planning Order
Respondent-Father next seeks review of the trial court's 31 May 2017 permanency planning order. Respondent-Father renews his contention that the trial court erred by failing to place the child with his wife, and argues the trial court erred by failing to make required findings under N.C. Gen. Stat. § 7B-906.1(e) (2017). Respondent-Father concedes he did not include reference to this order in his notice of appeal in violation of N.C. R. App. P. 3(d). However, Respondent-Father argues that it is an appealable interlocutory order pursuant to N.C. Gen. Stat. § 1-278 (2017). See Tinajero v. Balfour Beatty Infrastructure, Inc. , 233 N.C. App. 748, 757, 758 S.E.2d 169, 175 (2014).
N.C.G.S. § 1-278 provides that: "Upon an appeal from a judgment, the court may review any intermediate order involving the merits and necessarily affecting the judgment." In Tinajero , this Court stated that:
[E]ven when a notice of appeal fails to reference an interlocutory order, in violation of Rule 3(d), appellate review of that order pursuant to N.C. Gen. Stat. § 1-278 is proper under the following circumstances: (1) the appellant must have timely objected to the order; (2) the order must be interlocutory and not immediately appealable; and (3) the order must have involved the merits and necessarily affected the judgment. All three conditions must be met.
Id. at 757, 758 S.E.2d at 175 (citing Brooks v. Wal-Mart Stores, Inc. , 139 N.C. App. 637, 641, 535 S.E.2d 55, 59 (2000) ).
All of the conditions set forth in Tinajero have not been satisfied in this case. Respondent-Father objected to the trial court's order, and specifically the failure of the trial court to place the child with his wife. Additionally, the trial court's order was clearly interlocutory because it did not dispose entirely of the case. See Veazey v. City of Durham , 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy."). Therefore, the first two conditions in Tinajero were met; however, the order fails to meet the third condition as it did not "necessarily affect[ ] the judgment." Tinajero , 233 N.C. App. at 757, 758 S.E.2d at 175.
"An order involves the merits and necessarily affects the judgment if it deprives the appellant of one of the appellant's substantive legal claims ." Yorke v. Novant Health, Inc. , 192 N.C. App. 340, 348, 666 S.E.2d 127, 133 (2008) (emphasis added). Here, the trial court's order did not involve the merits of the petition to terminate Respondent-Father's parental rights, and it did not deprive him of any defenses to the petition. See Fairfield Harbour Prop. Owners Ass'n, Inc. v. Midsouth Golf, LLC , 215 N.C. App. 66, 72, 715 S.E.2d 273, 280 (2011) (concluding that the trial court's grant of partial summary judgment involved the merits and necessarily affected the judgment where it eliminated several of the defendant's defenses). Because the trial court's permanency planning order did not involve the merits and did not necessarily affect the termination order, it was not an appealable interlocutory order under N.C.G.S. § 1-278.
Respondent-Father alternatively seeks review of the trial court's 31 May 2017 order by petition for writ of certiorari. In our discretion, and to prevent repetition of error on remand, we allow Respondent-Father's petition.
"Appellate review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and the findings support the conclusions of law." In re J.C.S. , 164 N.C. App. 96, 106, 595 S.E.2d 155, 161 (2004) (citations omitted), overruled on other grounds by In re R.T.W., 359 N.C. 539, 614 S.E.2d 489 (2005). Conclusions of law are reviewed de novo . In re J.S.L. , 177 N.C. App. 151, 154, 628 S.E.2d 387, 389 (2006).
The purpose of a permanency planning hearing is to establish "the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-906.1(g) (2017). At the conclusion of a permanency planning hearing:
The court may maintain the juvenile's placement under review or order a different placement, appoint a guardian of the person for the juvenile pursuant to [N.C.]G.S. 7B-600, or order any disposition authorized by [N.C.]G.S. 7B-903, including the authority to place the child in the custody of either parent or any relative found by the court to be suitable and found by the court to be in the best interests of the juvenile.
N.C. Gen. Stat. § 7B-906.1(i) (2017). If the trial court elects not to place the juvenile with a parent, the court must also enter findings as to the relevant factors listed in N.C.G.S. § 7B-906.1(e). While the trial court need not make formal findings regarding each of the factors, it must make findings regarding all the factors that are relevant. See J.C.S. , 164 N.C. App. at 105, 595 S.E.2d at 161 (construing predecessor statute N.C. Gen. Stat. § 7B-907(b) ). A factor is considered relevant if it "had been placed in issue by virtue of the evidence presented before the trial court[.]" In re D.H. , 232 N.C. App. 217, 222 n. 3, 753 S.E.2d 732, 735 n. 3 (2014) (construing N.C. Gen. Stat. § 7B-1110(a) ).
One of the relevant factors listed in N.C.G.S. § 7B-906.1(e) is:
(2) Where the juvenile's placement with a parent is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established and, if so, the rights and responsibilities that should remain with the parents.
N.C.G.S. § 7B-906.1(e) (emphasis added). At the permanency planning hearing, the trial court received evidence and found as fact that Respondent-Father's wife's home study was approved. Thus, N.C.G.S. § 7B-906.1(e)(2) was a relevant factor regarding which the trial court was required to make findings of fact. Where the trial court's findings do not comport with the requirements of N.C.G.S. § 7B-906.1(e), even if the evidence may have been sufficient to support the trial court's determination, the trial court's order must be reversed. In re M.R.D.C. , 166 N.C. App. 693, 695-96, 603 S.E.2d 890, 892 (2004) (construing predecessor statute N.C. Gen. Stat. § 7B-907(b) ), disc. review denied , 359 N.C. 321, 611 S.E.2d 413 (2005).
III. Conclusion
We reverse the trial court's 2 November 2017 order terminating Respondent-Father's parental rights. Additionally, we reverse the trial court's 31 May 2017 permanency planning order and remand this case to the trial court due to the trial court's failure to comply with N.C.G.S. § 7B-906.1(e). We do not reach Respondent-Father's remaining argument on appeal.
REVERSED AND REMANDED.
Report per Rule 30(e).
Judges HUNTER, JR. and ARROWOOD concur.

The mother does not appeal the trial court's order and is not a party to this appeal.